IN THE UNITED STATES DISTRICT COURT
FOR THIS DISTRICT OF COLUMBIA

—————————————————————
ESTATE OF MICHAEL HEISER,  )
 ET AL.,       )
           )
    Plaintiffs,   )
           )
   v.       )  Case No. 00-CV-02329 (TPJ) (DAR)
           )
ISLAMIC REPUBLIC OF IRAN,  )
 ET AL.,       )
           )
    Defendants.  )
—————————————————————)

—————————————————————
ESTATE OF MILLARD D. CAMPBELL, )
 EL AL.,       )
           )
    Plaintiffs,   )
           )
   v.       )  Case No. 01-CV-02104 (TPJ) (DAR)
           )
ISLAMIC REPUBLIC OF IRAN,  )
 ET AL.,       )
           )
    Defendants.  )
—————————————————————)

**(Consolidated)**

## <u>PLAINTIFFS' PRETRIAL STATEMENT</u>

Plaintiffs[1], by counsel, in accordance with the request of Magistrate Judge Deborah A. Robinson and Local Rule 16.5 of the United States District Court Rules for the District of Columbia, hereby submit this proposed Pretrial Statement to the Court.

---

[1] Plaintiffs in the <u>Estate of Michael Heiser et al.</u> case include: (1) the Estate of Michael Heiser, deceased; (2) Gary Heiser; (3) Frances Heiser; (4) the Estate of Leland Timothy Haun, deceased; (5)

*(footnote continued to next page)*

# I.        INTRODUCTION

This is an action for wrongful death resulting from an act of state-sponsored terrorism. Specifically, Plaintiffs' claims arise from Defendants' sponsorship of the terrorist bombing of the Khobar Towers, a United States military complex, in Dhahran, Saudi Arabia, on June 25, 1996, which resulted in the deaths of nineteen United States servicemen.  Defendants have not entered an appearance in this matter.[2]  It is expected that this Court will enter a default against Defendants, pursuant to 28 U.S.C. § 1608(e) and Fed. R. Civ. P. 55(a), shortly after November

---

*(footnote continued from previous page)*

Ibis S. Haun; (6) Milagritos Perez-Dalis; (7) Senator Haun; (8) the Estate of Justin R. Wood, deceased; (9) Richard W. Wood; (10) Kathleen M. Wood; (11) Shawn M. Wood; (12) the Estate of Earl F. Cartrette, Jr., deceased; (13) Denise M. Eichstaedt; (14) Anthony W. Cartrette; (15) Lewis W. Cartrette; (16) the Estate of Brian McVeigh, deceased; (17) Sandra M. Wetmore; and (18) James V. Wetmore.

Plaintiffs in the Estate of Millard D. Campbell et al. case include: (1) the Estate of Millard D. Campbell, deceased; (2) Marie R. Campbell; (3) Bessie A. Campbell; (4) the Estate of Kevin J. Johnson, deceased; (5) Shyrl L. Johnson; (6) Che G. Colson; (7) Kevin Johnson, a minor, by his legal guardian Shyrl L. Johnson; (8) Nicholas A. Johnson, a minor by his legal guardian Shyrl L. Johnson; (9) Laura E. Johnson; (10) Bruce Johnson; (11) the Estate of Joseph E. Rimkus, deceased; (12) Bridget Brook; (13) James R. Rimkus; (14) Anne M. Rimkus; (15) the Estate of Brent E. Marthaler, deceased; (16) Katie L. Marthaler; (17) Sharon Marthaler; (18) Herman C. Marthaler III; (19) Matthew Marthaler; (20) Kirk Marthaler; (21) Christopher R. Nguyen, individually and as Executor of the Estate of Thanh Van Nguyen, deceased; (22) the Estate of Joshua E. Woody, deceased; (23) Dawn Woody; (24) Bernadine R. Beekman; (25) George M. Beekman; (26) Tracy M. Smith; (27) Jonica L. Woody; (28) Timothy Woody; (29) the Estate of Peter Morgera, deceased; (30) Michael Morgera; (31) Thomas Morgera; (32) the Estate of Kendall Kitson, Jr., deceased; (33) Nancy R. Kitson; (34) Kendall K. Kitson; (35) Steve K. Kitson; (36) Nancy A. Kitson; (37) the Estate of Christopher Adams, deceased; (38) Catherine Adams; (39) John E. Adams; (40) Patrick D. Adams; (41) Michael T. Adams; (42) Daniel Adams; (43) Mary Young; (44) Elizabeth Wolf; (45) William Adams; (46) Cecil H. Lester, individually and as Executor of the Estate of Christopher Lester, deceased; (47) Judy Lester; (48) Cecil H. Lester, Jr.; (49) Jessica F. Lester; (50) the Estate of Jeremy A. Taylor, deceased; (51) Lawrence E. Taylor; (52) Vickie L. Taylor; (53) Starlina D. Taylor; (54) the Estate of Patrick P. Fennig, deceased; (55) Thaddeus C. Fennig; (56) Catherine Fennig; (57) Paul D. Fennig; and (58) Mark Fennig.

[2]     Defendants were properly served with the Second Amended Complaints, Notices of Suit, and Summonses, pursuant to 28 U.S.C. § 1608(a)(4), on September 16, 2003.  *See* Letter from Edward A. Bentacourt, Director, Office of Policy Review and Interagency Liaison, Bureau of Consular Affairs, U.S. Department of State to Ms. Mayer-Whittington, Clerk, U.S. District Court for the District of Columbia, dated October 6, 2003, attached hereto as Exhibit A.  Pursuant to 28 U.S.C. § 1608(d), Defendants are required to serve an answer or other responsive pleading within 60 days of service of Second Amended Complaints upon them.  Plaintiffs do not expect Defendants to respond whatsoever to the Second Amended Complaints.  Consequently, Plaintiffs will file a Motion for Entry of Default with the Court on November 17, 2003 – more than 60 days from the date of service.  The Court,

*(footnote continued to next page)*

17, 2003 and in advance of the commencement of the trial on December 1, 2003. Notwithstanding Defendants' default, however, this Court is compelled to make further inquiry prior to entered a judgment by default against the Defendants.   The Foreign Sovereign Immunities Act ("FSIA"), as amended, pursuant to which these actions are filed, requires that a default judgment against a foreign state be entered only after a plaintiff "establishes his claim or right to relief by evidence that is satisfactory to the Court."  28 U.S.C. § 1608(e).

Plaintiffs bring these consolidated actions pursuant to two amendments to the FSIA, which grant jurisdiction over foreign states and their officials, agents, and employees, and create federal causes of action related to personal injury or death resulting from state-sponsored terrorist attacks.

## II.     PARTIES AND COUNSEL

### A.     Plaintiffs

Plaintiffs are the wives (widows), children and stepchildren, parents and stepparents, siblings, and estates of seventeen U.S. Air Force servicemen who were killed as a result of the terrorist bombing of the Khobar Towers on June 25, 1995.  The seventeen deceased servicemen (collectively, the "Decedents") include: (1) Captain Christopher Adams; (2) Sergeant Millard Campbell; (3) Senior Airman Earl F. Cartrette, Jr.; (4) Technical Sergeant Patrick P. Fennig; (5) Captain Leland Timothy Haun; (6) Master Sergeant Michael Heiser; (7) Staff Sergeant Kevin J. Johnson; (8) Master Sergeant Kendall Kitson, Jr.; (9) Airman First-Class Christopher Lester; (10) Airman First-Class Brent E. Marthaler; (11) Airman First-Class Brian McVeigh; (12)

---

*(footnote continued from previous page)*
    therefore, will be able to enter a default against Defendants prior to the commencement of the trial on December 1, 2003.

Airman First-Class Peter J. Morgera; (13) Technical Sergeant Thanh Van Nguyen; (14) Airman First-Class Joseph E. Rimkus; (15) Senior Airman Jeremy A. Taylor; (16) Airman First-Class Justin R. Wood; and (17) Airman First-Class Joshua E. Woody.  The estates and families of the other two airmen injured and killed at the Khobar Towers are not parties to this case.  Counsel have no knowledge as to whether they intend to initiate a separate action.

Plaintiffs are represented in these consolidated cases by Shale D. Stiller, Kurt J. Fischer, Adam S. Hoffinger, Elizabeth R. Dewey, Louis J. Rouleau, and Hank B. Walther of Piper Rudnick LLP, Washington, D.C.  In addition, Joshua M. Ambush, Baltimore, MD and Helen-Louise Hunter, Bethesda, MD serve as of counsel.

Plaintiffs are listed below by the Decedent for whom they are claiming damages:

**1.    Decedent Christopher Adams**

(a)    Catherine Adams resides in Long Beach, New York and is the mother of decedent Christopher Adams.

(b)    John E. Adams resides in Charlotte, North Carolina and is a brother of decedent Christopher Adams.

(c)    Patrick D. Adams resides in Charlotte, North Carolina and is a brother of decedent Christopher Adams.

(d)    Michael T. Adams resides in Davidson, North Carolina and is a brother of decedent Christopher Adams.

(e)    Daniel Adams resides in Long Beach, New York and is a brother of decedent Christopher Adams.

(f)    William Adams resides in Lindenhurst, New York and is a brother of decedent Christopher Adams.

(g)     Mary Young resides in Massapequa, New York and is a sister of decedent Christopher Adams.

(h)     Elizabeth Wolf resides in Massapequa, New York and is a sister of decedent Christopher Adams.

(i)     Estate of Christopher Adams is the legal entity created to recover damages on behalf of Christopher Adams, deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist attack on the Khobar Towers.  Catherine Adams is the Administrator of the Estate of Christopher Adams.  *See* Exhibit B (attaching Letters of Administration).

## 2.     Decedent Millard D. Campbell

(a)     Marie R. Campbell resides in Arlington, Texas and is the wife of decedent Millard D. Campbell.

(b)     Bessie A. Campbell resides in Angleton, Texas and is the mother of decedent Millard D. Campbell.

(c)     Estate of Millard D. Campbell is the legal entity created to recover damages on behalf of Millard D. Campbell, deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist attack on the Khobar Towers.  Marie R. Campbell is in the process of opening the Estate and is expected to be named as Administrator of the Estate of Millard Campbell.

## 3.     Decedent Earl F. Cartrette, Jr.

(a)     Denise M. Eichstaedt resides in New Smyrna Beach, Florida and is the mother of decedent Earl F. Cartrette, Jr.

(b)     Anthony W. Cartrette resides in Fort Lauderdale, Florida and is a brother of decedent Earl F. Cartrette, Jr.

(c)     Lewis W. Cartrette resides in Jeffersonville, Indiana and is a brother of decedent Earl F. Cartrette, Jr.

(d)     Estate of Earl F. Cartrette, Jr., deceased is the legal entity created to recover damages on behalf of Earl F. Cartrette, Jr., deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist attack on the Khobar Towers.  Denise M Eichstaedt is the Administrator of the Estate of Earl F. Cartrette, Jr.  *See* Exhibit B.

4.      **Decedent Patrick P. Fennig**

(a)     Thaddeus C. Fennig resides in Greendale, Wisconsin and is the father of decedent Patrick P. Fennig.

(b)     Catherine Fennig resides in Greendale, Wisconsin and is the mother of decedent Patrick P. Fennig.

(c)     Paul D. Fennig resides in West Allis, Wisconsin and is a brother of decedent Patrick P. Fennig.

(d)     Mark Fennig resides in Hartland, Wisconsin and is a brother of decedent Patrick P. Fennig.

(e)     Estate of Patrick P. Fennig is the legal entity created to recover damages on behalf of Patrick P. Fennig, deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist attack on the Khobar Towers.  Lawrence E. Taylor is the Administrator of the Estate of Patrick P. Fennig.  *See* Exhibit B.

5.      **Decedent Leland Timothy Haun**

(a)     Ibis S. Haun resides in Cocoa Beach, Florida and is the wife of decedent Leland Timothy Haun.

(b)    Milagritos Perez-Dalis resides in Tucson, Arizona and is the stepdaughter of decedent Leland Timothy Haun.

(c)    Senator Haun resides in Tucson, Arizona and is the stepson of decedent Leland Timothy Haun.

(d)    Estate of Leland Timothy Haun is the legal entity created to recover damages on behalf of Leland Timothy Haun, deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist attack on the Khobar Towers.  Ibis S. Haun is the Administrator of the Estate of Leland Timothy Haun.  *See* Exhibit B.

**6.    Decedent Michael Heiser**

(a)    Gary Heiser resides in Palm Coast, Florida and is the father of decedent Michael Heiser.

(b)    Frances Heiser resides in Palm Coast, Florida and is the mother of decedent Michael Heiser.

(c)    Estate of Michael Heiser is the legal entity created to recover damages on behalf of Michael Heiser, deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist bombing on the Khobar Towers.  Gary and Frances Heiser are co-Administrators of the Estate of Michael Heiser.  *See* Exhibit B.

**7.    Decedent Kevin J. Johnson**

(a)    Shyrl L. Johnson resides in Melbourne, Florida and is the wife of decedent Kevin J. Johnson.

(b)    Ché G. Colson resides in Melbourne, Florida and is the stepson of decedent Kevin J. Johnson.

(c)    Kevin Johnson, a minor, resides in Melbourne, Florida and is a son of decedent Kevin J. Johnson.  Shyrl L. Johnson is Kevin Johnson's mother and legal guardian, and is representing his interests in this litigation.

(d)    Nicholas A. Johnson, a minor, resides in Melbourne, Florida and is a son of decedent Kevin J. Johnson.  Shyrl L. Johnson is Nicholas A. Johnson's mother and legal guardian, and is representing his interests in this litigation.

(e)    Laura E. Johnson resides in Shreveport, Louisiana and is the mother of decedent Kevin J. Johnson.

(f)    Bruce Johnson resides in Shreveport, Louisiana and is the brother of decedent Kevin J. Johnson.

(g)    Estate of Kevin J. Johnson is the legal entity created to recover damages on behalf of Kevin J. Johnson, deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist attack on the Khobar Towers.  Shyrl L. Johnson is the Administrator of the Estate of Kevin J. Johnson.  *See* Exhibit B.

**8.    Decedent Kendall Kitson, Jr.**

(a)    Nancy R. Kitson resides in Ft. Walton Beach, Florida and is the mother of decedent Kendall Kitson, Jr.

(b)    Kendall K. Kitson resides in Ft. Walton Beach, Florida and is the father of decedent Kendall Kitson, Jr.

(c)    Steve K. Kitson resides in Yukon, Oklahoma and is the brother of decedent Kendall Kitson, Jr.

(d)    Nancy A. Kitson resides in Yukon, Oklahoma and is the sister of decedent Kendall Kitson, Jr.

(e)    Estate of Kendall Kitson, Jr. is the legal entity created to recover damages on behalf of Kendall Kitson, Jr., deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist attack on the Khobar Towers.  Nancy R. Kitson and Kendall K. Kitson are in the process of opening the Estate of Kendall Kitson, Jr. and are expected to be named as co-Administrators of the Estate of Kendall Kitson, Jr.

**9.    Decedent Christopher Lester**

(a)    Cecil H. Lester resides in Wyoming, West Virginia and is the father of decedent Christopher Lester.

(b)    Judy Lester resides in Wyoming, West Virginia and is the mother of decedent Christopher Lester.

(c)    Cecil H. Lester, Jr. resides in Wyoming, West Virginia and is the brother of decedent Christopher Lester.

(d)    Jessica F. Lester, a minor, resides in Wyoming, West Virginia and is the sister of decedent Christopher Lester.  Cecil H. Lester and Judy Lester are the parents and legal guardians of Jessica F. Lester, and are representing her interests in this litigation.

(e)    Estate of Christopher Lester is the legal entity created to recover damages on behalf of Christopher Lester, deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist attack on the Khobar Towers.  Cecil H. Lester is the Administrator of the Estate of Christopher Lester.  *See* Exhibit B.

**10.    Decedent Brent E. Marthaler**

(a)    Katie L. Marthaler resides in St. Michael, Minnesota and is the wife of decedent Brent E. Marthaler.

(b)     Sharon Marthaler resides in Cambridge, Minnesota and is the mother of decedent Brent E. Marthaler.

(c)     Herman C. Marthaler III resides in Cambridge, Minnesota and is the father of decedent Brent E. Marthaler.

(d)     Mathew Marthaler resides in Cambridge, Minnesota and is a brother of decedent of Brent E. Marthaler.

(e)     Kirk Marthaler resides in Shafer, Minnesota and is a brother of decedent Brent E. Marthaler.

(f)     Estate of Brent E. Marthaler is the legal entity created to recover damages on behalf of Brent E. Marthaler, deceased, and his heirs-at-law, arising from the June 25, 1998 terrorist attack on the Khobar Towers.  Katie L. Marthaler is in the process of opening the Estate of Brent E. Marthaler and is expected to be named as Administrator of the Estate of Brent E. Marthaler.  *See* Exhibit B.

## 11.    Decedent Brian McVeigh

(a)     Sandra M. Wetmore resides in Debary, Florida and is the mother of decedent Brian McVeigh.

(b)     James V. Wetmore resides in Debary, Florida and is the stepfather of decedent Brian McVeigh.

(c)     Estate of Brian McVeigh, deceased is the legal entity created to recover damages on behalf of Brian McVeigh, deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist attack on the Khobar Towers.  Sandra M Wetmore is the Administrator of the Estate of Brian McVeigh. *See* Exhibit B.

12.    **Decedent Peter J. Morgera**

(a)    Michael Morgera resides in Center Barnstead, New Hampshire and is a brother of decedent Peter J. Morgera.

(b)    Thomas Morgera resides on Misawa Air Base, Japan and is a brother of decedent Peter J. Morgera.

(c)    Estate of Peter J. Morgera is the legal entity created to recover damages on behalf of Peter J. Morgera, deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist attack on the Khobar Towers.  Michael Morgera is in the process of opening the Estate and is expected to be named as Administrator of the Estate of Peter J. Morgera.

13.    **Decedent Thanh Van Nguyen**

(a)    Christopher R. Nguyen resides in Westerville, Ohio and is the son of decedent Thanh Van Nguyen.

(b)    Estate of Thanh Van Nguyen is the legal entity created to recover damages on behalf of Thanh Van Nguyen, deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist attack on the Khobar Towers.  Christopher R. Nguyen is the Administrator of the Estate of Thanh Van Nguyen.  *See* Exhibit B.

14.    **Decedent Joseph E. Rimkus**

(a)    Bridget Brook resides in Niceville, Florida and is the mother of decedent Joseph E. Rimkus.

(b)    James R. Rimkus resides in Crestview, Florida and is the brother of decedent Joseph E. Rimkus.

(c)    Anne M. Rimkus resides in Gainesville, Florida and is the sister of decedent Joseph E. Rimkus.

(d)     Estate of Joseph E. Rimkus is the legal entity created to recover damages on behalf of Joseph E. Rimkus, deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist attack on the Khobar Towers.  Bridget Brooks is the Administrator of the Estate of Joseph E. Rimkus.  *See* Exhibit B.

### 15.     Decedent Jeremy A. Taylor

(a)     Lawrence E. Taylor resides in Douglass, Kansas and is the father of decedent Jeremy A. Taylor.

(b)     Vickie L. Taylor resides in Douglass, Kansas and is the mother of decedent Jeremy A. Taylor.

(c)     Starlina A. Taylor resides in Mulvane, Kansas and is the sister of decedent Jeremy A. Taylor.

(d)     Estate of Jeremy A. Taylor is the legal entity created to recover damages on behalf of Jeremy A. Taylor, deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist attack on the Khobar Towers.  Lawrence E. Taylor and Vicki L. Taylor are the co-Administrators of the Estate of Jeremy A. Taylor.  *See* Exhibit B.

### 16.     Decedent Justin R. Wood

(a)     Richard W. Wood resides in Modesto, California and is the father of decedent Justin R. Wood.

(b)     Kathleen M. Wood resides in Modesto, California and is the mother of decedent Justin R. Wood.

(c)     Shawn M. Wood resides in Modesto, California and is the brother of decedent Justin R. Wood.

(d)    Estate of Justin R. Wood is the legal entity created to recover damages on behalf of Justin R. Wood, deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist attack on the Khobar Towers.  Richard R. Wood is the Administrator of the Estate of Justin R. Wood.  *See* Exhibit B.

### 17.    **Decedent Joshua E. Woody**

(a)    Dawn Woody resides in Edmond, Oklahoma and is the wife of decedent Joshua E. Woody.

(b)    Bernadine R. Beekman resides in Lewisburg, Tennessee and is the mother of decedent Joshua E. Woody.

(c)    George M. Beekman resides in Lewisburg, Tennessee and is the stepfather of decedent Joshua E. Woody.

(d)    Tracy M. Smith resides in Kennesaw, Georgia and is a sister of decedent Joshua E. Woody.

(e)    Jonica L. Woody resides in Crofton, Maryland and is a sister of decedent Joshua E. Woody.

(f)    Timothy Woody resides in Geneva, New York and is the brother of decedent Joshua E. Woody.

(g)    Estate of Joshua E. Woody is the legal entity created to recover damages on behalf of Joshua E. Woody, deceased, and his heirs-at-law, arising from the June 25, 1996 terrorist attack on the Khobar Towers.  Dawn Woody is the Administrator of the Estate of Joshua E. Woody.  *See* Exhibit B.

### B.    <u>Defendants</u>

Defendant, the Islamic Republic of Iran ("Iran") is a foreign state and has been designated a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)).

Defendant the Iranian Ministry of Information and Security ("MOIS") is the Iranian intelligence service through which Iran sponsored the terrorist group which caused the bombing of the Khobar Towers and the extrajudicial killing of the Decedents.

Defendant the Iranian Islamic Revolutionary Guard Corp ("IRGC"), also known as the Pasdaran, is a non-traditional agency of Iran.  Defendant IRGC functions as an independent intelligence organization, both within and beyond Iran's borders.  The IRGC, acting as an agent of Iran, provided funds, training, and direction to the terrorist group which caused the bombing of the Khobar Towers and the extrajudicial killing of the Decedents.

Finally, Defendants John Does 1-99 are other officials, employees, and agents of the Islamic Republic of Iran, or others, whose identities are presently unknown, who performed acts which caused the terrorist bombing of the Khobar Towers and the extrajudicial killing of the Decedents.

### C.    <u>Consolidation</u>

This Court consolidated the above-captioned cases by Order dated February 1, 2002. Both cases arise out of the terrorist attack on the Khobar Towers on June 25, 1996, which resulted in the extrajudicial killing of the Decedents.  Consequently, both cases present the same legal issues and common facts.

### III.    STATEMENT OF THE CASE

Plaintiffs bring these survival and wrongful death actions individually, and on behalf of the Decedents' Estates, to recover damages arising out of the terrorist attack on the Khobar Towers, which resulted in the extrajudicial killing of the Decedents.

### A.    Historical Background

Plaintiffs allege that as early as May 1977, Iranian President Akbar Hashemi Rafsanjani established a special committee, known as the "working cell," whose members included senior Iranian officials and operatives tasked with designing projects of terrorist activity and supporting terrorist organizations in other countries. Plaintiffs have reason to believe that the decisions and findings developed by the "working cell" were submitted directly to the Ayatollah Khomenyni for approval. At the time, the Ayatollah Khomeyni was the undisputed supreme leader of Iran. His orders were authorized and handed down as "fatwa" or religious decrees. Iran's support of terrorist groups in other countries, which continues today, is a means for it to spread Islamic fundamentalism throughout the Arab world, especially in the Middle East, and remove Westerners and Western influence from the Middle East.

Hizbollah, which means "Party of God," was established in Lebanon in 1982, soon after Israel invaded Southern Lebanon. Hizbollah is a politico-paramilitary organization which carries out acts of terrorism in Lebanon and elsewhere, including Saudi Arabia. As Plaintiffs will demonstrate at trial, Hizbollah's ideological connection with the Iranian Revolution is well established and documented in numerous scholarly publications. The Iranian government desired to establish a militant organization that would use armed force to oppose the Israeli presence in Lebanon and to counter Western influence throughout the Middle East. The evidence will demonstrate that Iran—through MOIS and IRGC – created Hizbollah as a terrorist

15

organization tasked with spreading Islamic fundamentalism and destabilizing governments through terrorist acts. MOIS and IRGC provided funding, training, and equipment to Hizbollah and enabled it to pursue and achieve its goals, through the use of terrorism. Hizbollah has used several names in its terrorist campaign, including the Islamic Jihad, the Palestinian Jihad, and the Revolutionary Justice Organization.

By the early 1990s, Hizbollah established operations in a number of countries utilizing the tactics and training taught to them in Iran and at facilities outside of Iran, which were established, operated, and supported by Iran through MOIS and IRGC. Plaintiffs will show that "Saudi Hizbollah" comprises Hizbollah members who are citizens of Saudi Arabia or operate in Saudi Arabia. The Khobar Towers complex is located in the Eastern Province of Saudi Arabia, where the majority of the population are Shiite Muslims. The overwhelming majority of Saudis, however, are Sunni Muslims. Indeed, the Saudi Royal family, who control all the political, religious, and governmental apparatuses in Saudi Arabia, is Sunni. Saudi Arabia has a long history of discriminating against its minority Shiite population.

At all relevant times, the Islamic Republic of Iran, through its agents MOIS and IRGC, provided material resources and support, in the form of funding, training and direction, to Hizbollah, including Saudi Hizbollah. MOIS is an Iranian government organization which was formally established by law in 1983, but which appears to be an outgrowth of the secret police under the former Shah of Iran. IRGC is a powerful, military Iranian organization charged with defending and furthering Iran's Islamic fundamentalist revolution and is dedicated to the export of Islamic fundamentalist principles throughout the world through acts of terrorism. The Islamic Republic of Iran, through MOIS and IRGC, sponsors Hizbollah, including Saudi Hizbollah, within the meaning of 28 U.S.C. § 1605(a)(7).

16

### B.    Specific Statement of the Facts

Plaintiffs respectfully submit that the following facts will be demonstrated at trial:

In June 1996, Christopher Adams ("Adams"), deceased, a United States citizen, was a 30-year-old-captain in the U.S. Air Force.  Adams was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia.  He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq.  On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Adams.

In June 1996, Millard Campbell ("Campbell"), deceased, a United States citizen, was a 30-year-old-sergeant in the U.S. Air Force.  Campbell was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia.  He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq.  On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Campbell.

In June 1996, Earl F. Cartrette, Jr. ("Cartrette"), deceased, a United States citizen, was a 22-year-old-senior-airman in the U.S. Air Force.  Cartrette was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia.  He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq.  On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Cartrette.

In June 1996, Patrick Fennig ("Fennig), deceased, a United States citizen, was a 34-year-old-technical-sergeant in the U.S. Air Force.  Fennig was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia.  He was tasked with the non-combat mission of

enforcing the "no-fly zone" in southern Iraq.  On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Fennig.

In June 1996, Leland Timothy Haun ("Haun"), deceased, a United States citizen, was a 33-year-old-captain in the U.S. Air Force.  Haun was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia.  He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq.  On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Haun.

In June 1996, Michael Heiser ("Heiser"), deceased, a United States citizen, was a 35-year-old-master-sergeant in the U.S. Air Force.  Heiser was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia.  He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq.  On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Heiser.

In June 1996, Kevin J. Johnson ("Johnson"), deceased, a United States citizen, was a 36-year-old-staff-sergeant in the U.S. Air Force.  Johnson was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia.  He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq.  On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Johnson.

In June 1996, Kendall Kitson, Jr. ("Kitson"), deceased, a United States citizen, was a 39-year-old-master-sergeant in the U.S. Air Force.  Kitson was stationed in Saudi Arabia and lived

at the Khobar Towers in Dhahran, Saudi Arabia. He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq. On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Kitson.

In June 1996, Christopher Lester ("Lester"), deceased, a United States citizen, was a 19-year-old-airman-first-class in the U.S. Air Force. Lester was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia. He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq. On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Lester.

In June 1996, Brent E. Marthaler ("Marthaler"), deceased, a United States citizen, was a 20-year-old-airman-first-class in the U.S. Air Force. Marthaler was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia. He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq. On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Marthaler.

In June 1996, Brian McVeigh ("McVeigh"), deceased, a United States citizen, was a 21-year-old-airman-first-class in the U.S. Air Force. McVeigh was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia. He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq. On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of McVeigh.

In June 1996, Peter J. Morgera ("Morgera"), deceased, a United States citizen, was a 24-year-old-airman-first-class in the U.S. Air Force.  Morgera was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia.  He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq.  On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Morgera.

In June 1996, Thanh Van Nguyen ("Nguyen"), deceased, a United States citizen, was a 37-year-old-technical-sergeant in the U.S. Air Force.  Nguyen was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia.  He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq.  On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Nguyen.

In June 1996, Joseph E. Rimkus ("Rimkus"), deceased, a United States citizen, was a 22-year-old-airman-first-class in the U.S. Air Force.  Rimkus was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia.  He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq.  On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Rimkus.

In June 1996, Jeremy A. Taylor ("Taylor"), deceased, a United States citizen, was a 23-year-old-senior-airman in the U.S. Air Force.  Taylor was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia.  He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq.  On June 25, 1996, members of Saudi Hizbollah, at

the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Taylor.

In June 1996, Justin R. Wood ("Wood"), deceased, a United States citizen, was a 20-year-old-airman-first-class in the U.S. Air Force.  Wood was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia.  He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq.  On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Wood.

In June 1996, Joshua E. Woody ("Woody"), deceased, a United States citizen, was a 20-year-old-airman-first-class in the U.S. Air Force.  Woody was stationed in Saudi Arabia and lived at the Khobar Towers in Dhahran, Saudi Arabia.  He was tasked with the non-combat mission of enforcing the "no-fly zone" in southern Iraq.  On June 25, 1996, members of Saudi Hizbollah, at the direction and with the support of Iran, intentionally and willfully bombed the Khobar Towers, resulting in the death of Woody.

In the early 1990s, the Unites States military developed a presence in Saudi Arabia.  Iran viewed the presence of United States personnel, including members of the United States armed forces, as supportive of the Saudi monarchy.  Iran believed that the Saudi monarchy was pro-Western and corrupt and that a large scale terrorist operation designed to kill Americans would result in both revolution and the establishment of an Islamic Republic of Saudi Arabia.  The Iranian government, through MOIS and IRGC and in concert with Hizbollah, began preparations for the bombing of a target associated with American interests.

In 1995, Iran, through MOIS and IRGC and in concert with Hizbollah members, began months of preparation for such a bombing.  Hizbollah operatives began to scout potential United

States targets in Saudi Arabia. Shipments of explosives were smuggled into Saudi Arabia and stored.

In June 1995, Hizbollah operatives, Ali Al-Marhoun ("Al-Marhoun"), Saleh Ramadan ("Ramadan"), and Mustafa Al-Mu'alem ("Al-Mu'alem"), began regular surveillance of the Khobar Towers. *See* Indictment issued in Alexandria, Virginia, June 2001 at ¶ 22, attached hereto Exhibit C.

On the evening of June 25, 1996, Hizbollah operatives, Ahmed Al-Mughassil ("Al-Mughassil") (head of the military wing of Saudi Hizbollah), Ali Al-Houri ("Al-Houri"), Hani Al-Sayegh ("Al-Sayegh"), Abdallah Al-Jarash ("Al-Jarash"), and Hussein Al-Mughis ("Al-Mughis"), met at a farm in Qatif, Saudi Arabia, to review final preparations for the attack that evening. The group then executed the bombing plan. *Id.* at ¶ 36.

On June 25, 1996, shortly before 10:00 p.m., Hizbollah operatives, Al-Sayegh and Al-Jarash drove a Datsun automobile to the parking lot adjoining Khobar Towers building # 131 as a scout vehicle and parked in the far corner of the parking lot. Next to enter the parking lot was the getaway car, a white four-door Chevrolet Caprice that Al-Mughis had borrowed from a friend. The Datsun automobile containing Al-Sayegh and Al-Jarash signaled that all was clear by blinking its lights. With that, the bomb truck (a tanker truck bought by John Doe from a car dealership in Saudi Arabai) driven by Al-Mughassil, with Al-Houri as passenger, entered the parking lot and backed against a fence just in front of Khobar Towers building # 131. *Id.* at ¶ 37.

After parking the bomb truck, Al-Mughassil and Al-Houri quickly exited and entered the back seat of the white Caprise, which drove away from the lot, followed by the Datsun. Within minutes, the truck bomb exploded, devastating the north side of Khobar Towers building # 131, which was occupied by American military personnel. The explosion killed nineteen members of

the United States Air Force, including decedents Adams, Campbell, Cartrette, Fennig, Haun, Heiser, Johnson, Kitson, Lester, Marthaler, McVeigh, Morgera, Nguyen, Rimkus, Taylor, Wood and Woody, and wounded 372 other Americans. *Id.*

     **C.**     **Basis of the Court's Jurisdiction**

Section 1605(a)(7) of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.*, provides a cause of action against a foreign state for anyone who suffered personal injury "that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act . . . ." 28 U.S.C. § 1605(a)(7). Thus, the FSIA explicitly authorizes wrongful death claims against a foreign state that provides material support or resources for the act of extrajudicial killing. *See* Bench Memorandum In Support Of Finding That The Foreign Sovereign Immunities Act Creates A Cause Of Action Against Foreign States, attached hereto as Exhibit D.

## IV.    STATEMENT OF PLAINTIFFS' CLAIMS

The Decedents, Adams, Campbell, Cartrette, Fennig, Haun, Heiser, Johnson, Kitson, Lester, Marthaler, McVeigh, Morgera, Nguyen, Rimkus, Taylor, Wood and Woody were "extrajudicially killed" within the meaning of 28 U.S.C. § 1605(e). Section 1605(e) adopts the definition of an extrajudicial killing contained in the Torture Victim Protection Act ("TVPA") of 1991, Pub. L. No. 102-256, § 3(a), 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note), i.e., "a deliberate killing not authorized by a previous judgment pronounced by a regularly constituted court affording all judicial guarantees which are recognized as indispensable by civilized peoples." 28 U.S.C. § 1350 note. The evidence is conclusive that the Decedents were killed as a result of the terrorist bombing of the Khobar Towers building # 131. The bombing was carried out by members of the terrorist organization known as Saudi Hizbollah, which, at the

time, was funded and supported by Iran, through its agents MOIS and IRGC, and thus, the Islamic Republic of Iran is liable to the Plaintiffs under the FSIA.  Furthermore, Decedents' status as servicemen does not bar Plaintiffs' claims because Decedents were noncombatants (i.e., not engaged in hostilities).  *See* Bench Memorandum Regarding The Ability Of United States Service Members To Recover Damages Under The FSIA, attached hereto as Exhibit E.

This Court, in numerous other cases over the last five years, already has held that the Islamic Republic of Iran is liable to victims of state-sponsored terrorism.  *See e.g., Surette v. Islamic Republic of Iran*, Civil Action No. 01-0570 (D.D.C. November 1, 2002);  *Carlson v. Islamic Republic of Iran*, Civil Action No. 00-13909 (D.D.C. April 19, 2002);  *Stethem v. Republic of Iran*, Civil Action No. 00-0159 (D.D.C. April 19, 2002); *Wagner v. Islamic Republic or Iran*, 172 F. Supp.2d 128 (D.D.C. 2001); *Jenco v. Islamic of Iran*, 2001 WL 871766 (D.D.C. November 1, 2001);  *Polhill v. Islamic Republic of Iran*, Civil Action No. 00-1789 (D.D.C. August 23, 2001);  *Sutherland v. Islamic Republic of Iran*, 151 F. Supp.2d 27 (D.D.C. 2001);  *Anderson v. Islamic Republic of Iran*, 90 F. Supp.2d 107 (D.D.C. 2000);  *Higgins v. Islamic Republic of Iran*, Civil Action No. 99-00377 (D.D.C. September 21, 2000); and  *Cicippio v. Islamic Republic of Iran*, 18 F. Supp.2d 62 (D.D.C. 1998).

Plaintiffs seek compensatory damages for the following causes of action:  wrongful death; survival damages; economic loss damages; intentional infliction of emotional distress; loss of consortium; and loss of solatium.  Each of these causes of action is authorized by Section 1605(a)(7) of the FSIA and Section  589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act of 1997, *Civil Liability for Act of State Sponsored Terrorism*, Pub. L. 104-208, 110 Stat. 3309-173 (September 30, 1996).

## V.    SCHEDULE OF WITNESSES[3]

Plaintiffs expect to call the witnesses below to testify at trial.  A brief summary of the direct testimony that Plaintiffs expect to elicit from each witness is provided.  Expert witnesses are indicated with an asterisk; in several instances an expert witness is also a fact witness.

A.    *Colonel Douglas Cochran, U.S. Air Force*:  Colonel  Cochran  resides  at  445 Suwannee Rd., Tyndall AFB, Florida 32403.   Col. Cochran, a career U.S. Air Force officer, currently serving at Tyndall AFB, served as the commanding officer of the 58th Fighter Squadron, Englin AFB in Florida.  In June 1996, the 58th Fighter Squadron was participating in Operation Southern Watch in Dhahran, Saudi Arabia.  Plaintiffs expect Col. Cochran to testify that the Decedents were U.S. Air Force servicemen in Operation Southern Watch (i.e., enforcement of the no-fly zone in Iraq).  He will testify that the Decedents were not engaged in combat, but rather acted as the ground support for the airmen and planes flying over southern Iraq.  Col. Cochran will also testify about certain of the Decedents about whom he has personal knowledge.  Col. Cochran should testify for no more than 90 minutes.

B.    *Staff Sergeant Jerry T. Sasser*:  Sergeant Sasser, Nellis AFB, Las Vegas, Nevada, is an eyewitness to the terrorist bombing of the Khobar Towers building # 131.  Plaintiffs expect Sergeant Sasser to testify that he was responsible for evacuating most of the dead and injured airmen.  He will also describe to the Court the horrific effect of the bombing on the servicemen present.  Sergeant Sasser's testimony will last no more than 60 minutes.

---

[3]    Certain Plaintiffs will submit affidavits in lieu of testifying a trial.  These Plaintiffs include: Anthony W. Cartrette; Lewis W. Cartrette; Laura E. Johnson; Kendall K. Kitson; Nancy R. Kitson; Lawrence E. Taylor; and Starlina D. Taylor.  This Court indicated at a status conference in this matter that it

*(footnote continued to next page)*

C.    *Technical Sergeant Selena P. Zuhoski*:    Sergeant Zuhoski, Appellate Defense Division, Air Force Legal Services Agency, Bolling AFB, Washington, D.C., is an eyewitness to the bombing of the Khobar Towers.  Sergeant Zuhoski will testify that she climbed up into the shattered building no. 131 in an attempt to rescue injured officers and airmen.  She will describe to the Court the brutality of the terrorist attack and its effect on the victims.  Sergeant Zuhoski's testimony should last no longer than 60 minutes.

D.    *Staff Sergeant Guerrero*:    Sergeant Guerrero, stationed at Nellis AFB, Las Vegas, Nevada, is an eyewitness to the terrorist attack to the terrorist bombing of the Khobar Towers. Sergeant Guerrero will testify that he was on guard duty at the time of the bombing and saw the truck and get-away car position themselves in front of the building # 131 prior to the bombing. Sergeant Guerrero will also describe to the Court what happened after the bomb detonated. Sergeant Guerrero's testimony should last no longer than 60 minutes.

E.    *Louis Freeh*:  Mr. Freeh served as Director of the Federal Bureau of Investigation from 1993-2001.  He is currently Senior Vice Chairman for Administration and Legal Affairs at MBNA America, 1100 N. King Street, Wilmington, Delaware 19884.  The FBI was the lead U.S. agency investigating the terrorist attack on the Khobar Towers.  Mr. Freeh is expected to about the FBI's role in the investigation and its findings.  Mr. Freeh's testimony will last no longer than 45 minutes.

F.    *Dale Watson*:    Mr. Watson served as Executive Assistant FBI Director for Counterterrorism from 1999-2002.  Mr. Watson was selected to fill this role by Director Louis

---

*(footnote continued from previous page)*
would accept testimony by affidavit.  *See also Stern v. Islamic Republic of Iran*, 271 F. Supp.2d 286 (D.D.C. July 17, 2003) (permitting testimony by affidavit).

Freeh, who created the position in 1999.  He is currently a Principal at Booz Allen & Hamilton, 3190 Fairview Park Drive, Falls Church, Virginia 22042.  As the FBI's chief counterterrorism officer, Mr. Watson was directly involved in the FBI's investigation into the Khobar Towers bombing and will testify about how the FBI conducted its investigation and its findings.  Mr. Watson should testify for no more than 60 minutes.

G.    *Dr. Patrick Clawson\**:    Dr. Clawon is the Director of Research at The Washington Institute for Near East Policy, 1828 L Street, N.W., Washington, D.C. 20036.  Dr. Clawson has studied and written about Iran for many years and will testify that Hizbollah originated with Iranian sponsorship in 1982, following the Israeli invasion of Lebanon.  Dr. Clawson will also testify that MOIS and IRGC are Iranian government agencies and coordinate terrorist activities throughout the Middle East, including those of Hizbollah and Saudi Hizbollah. During the relevant time period, Iran, through MOIS and IRGC, provided Hizbollah with funding, arms, and training support.  Dr. Clawson will provide estimates of MOIS' and IRGC's annual budgets and estimate how much they expend annually in support of terrorist activities. Dr. Clawon will testify that punitive damages in an amount that is at least three time the terrorism budgets for MOIS and IRGC will likely have an impact on their terrorist activities.  Dr. Clawson should testify for no more than 60 minutes.  Plaintiffs may show a video of Dr. Clawson's deposition if Dr. Clawson is unavailable to testify at trial.

H.    *Katie L. Marthaler*:  Mrs. Marthaler's address is 550 Teakwood Lane, St. Michael, Minnesota 55367.  Mrs. Marthaler is a plaintiff in this matter and the Administrator of the estate of her deceased husband, Brent E. Marthaler.  Mrs. Marthaler will testify concerning her husband's life, his decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996.  Mrs. Marthaler will also testify

concerning  the attention her husband's death generated from the government, the media, and from people all over the world.  Mrs. Marthaler will also describe for the Court her relationship with her husband.  Moreover, Mrs. Marthaler will explain to the Court the devastating effects her husband's death has had on her own life.  Mrs. Marthaler's testimony will last about two hours.

I.    *Herman C. Marthaler III*:  Mr. Marthaler's address is 35175 Palisades Drive, N.W., Cambridge, Minnesota 55008.  Mr. Marthaler is a plaintiff in this matter and the father of decedent Brent E. Marthaler.  Mr. Marthaler will testify concerning his son's life, decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996.  Mr. Marthaler will also testify concerning the attention his son's death generated from the government, the media, and from people all over the world.  Mr. Marthaler will also describe for the Court his relationship with his son.  Moreover, Mr. Marthaler will explain the devastating effects his son's death has had on his own life.  Mr. Marthaler's testimony will last about 60 minutes.

J.    *Kirk Marthaler*:  Kirk Marthaler's address is 30917 Regal Avenue, Shafer, Minnesota 55074.  Kirk Marthaler is a plaintiff in this matter and a brother of decedent Brent E. Marthaler.  He is expected to testify that he and his brother Brent were extremely close.  Kirk Marthaler will describe the deep sense of loss he experienced at the time of Brent's death, the way that the news of his death affected him, and the grief that he still experiences on a daily basis.  Kirk Marthaler's testimony will last no longer than 60 minutes.

K.    *Mathew Marthaler*:  Mathew Marthaler's address is 35175 Palisades Dr., N.W., Cambridge, Minnesota 55008.  Mathew Marthaler is a plaintiff in this matter and a brother of decedent Brent E. Marthaler.  He is expected to testify that he and his brother Brent were extremely close.  Kirk Marthaler will describe the deep sense of loss he experienced at the time

of Brent's death, the way that the news of his death affected him, and the grief that he still experiences on a daily basis. Mathew Marthaler's testimony will last no more than 60 minutes.

L.    *Sharon Marthaler*:  Sharon Marthaler's address is 35175 Palisades Dr., N.W., Cambridge, Minnesota 55008. Sharon Marthaler is a plaintiff in this matter and the mother of decedent Brent E. Marthaler. Sharon Marthaler will testify concerning her son's life, decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996. Sharon Marthaler will also testify concerning the attention her son's death generated from the government, the media, and from people all over the world. She will also describe for the Court her relationship with his son. Moreover, Sharon Marthaler will explain the devastating effects her son's death has had on her own life. Sharon Marthaler's testimony will last about 90 minutes.

M.    *Shyrl L. Johnson*:  Shyrl Johnson's address is 2370 High Ridge Rd., Melbourne, Florida 32935. Shyrl Johnson is a plaintiff in this matter and the Administrator of the estate of her deceased husband, Kevin J. Johnson. She will testify concerning her husband's life, his decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996. Shyrl Johnson will also testify concerning the attention her husband's death generated from the government, the media, and from people all over the world. Shyrl Johnson will also describe for the Court her relationship with her husband. Moreover, she will explain to the Court the devastating effects her husband's death has had on her own life and her children's lives, especially minor sons and plaintiffs, Kevin Johnson and Nicholas Johnson. Shyrl Johnson's testimony will last about two hours.

N.    *Bruce Johnson*:  Bruce Johnson's address is 3121 Looney St., Shreveport, Louisiana 71119. Bruce Johnson is a plaintiff in this matter and the brother of decedent Kevin J.

Johnson. He is expected to testify that he and his brother Brent were extremely close. Bruce Johnson will describe the deep sense of loss he experienced at the time of Kevin's death, the way that the news of his death affected him, and the grief that he still experiences on a daily basis. Bruce Johnson's testimony will last no more than 60 minutes.

O.    *Michael Morgera*:  Michael Morgera's address is 52 Sandy Point Rd., Center Barnstead, New Hampshire 03225. Michael Morgera is a plaintiff in this matter and the expected Administrator of the estate of his deceased brother, Peter J. Morgera. Michael Morgera will testify concerning his brother's life, decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996. Michael Morgera will also testify concerning the attention his brother's death generated from the government, the media, and from people all over the world. He will also describe for the Court his relationship with Peter. Moreover, Michael Morgera will explain the devastating effects his brother's death has had on his own life. Michael Morgera's testimony will last about 90 minutes.

P.    *Technical Sergeant Thomas Morgera*:  Thomas Morgera, a sergeant in the U.S. Air Force, is currently stationed at Misawa AFB, Japan (address: PSC 76, Box 5181, APO, AP 96319, Misawa AFB). Thomas Morgera is a plaintiff in this matter and a brother of decedent Peter J. Morgera. Thomas Morgera will testify concerning his brother's life, decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996. Thomas Morgera will also testify concerning the attention his brother's death generated from the government, the media, and from people all over the world. He will also describe for the Court his relationship with Peter. Moreover, Thomas Morgera will explain the devastating effects his brother's death has had on his own life. Thomas Morgera's testimony will last no more 90 minutes.

Q.     *Christopher R. Nguyen*:   Mr. Nguyen's address is 7034 Maple Hill Drive, Westerville, Ohio 43082.  Mr. Nguyen is a plaintiff in this matter and the Administrator of the estate of his deceased father, Thanh Van Nguyen.    Mr. Nguyen will testify concerning his father's life, service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996.  Mr. Nguyen will also testify concerning the attention his father's death generated from the government, the media, and from people all over the world.  Mr. Nguyen will also describe for the Court his relationship with his father.  Moreover, he will explain to the Court the devastating effects his father's death has had on his own life.  Mr. Nguyen's testimony will last about two hours.

R.     *Teresa Pennington*:   Ms. Pennington resides at 7034 Maple Hill Drive, Westerville, Ohio 43082.  Ms. Pennington is the ex-wife of decedent Thanh Van Nguyen and the mother of Plaintiff Christopher Nguyen.  She will testify about Thanh Van Nguyen's life, his decision to join the Air Force, his service in the Air Force.  Ms. Pennington will also describe for the Court how devasted her son Christopher Nguyen was by his father's death.   Ms. Pennington's testimony will last 60 minutes.

S.     *Denise M. Eichstaedt*:  Mrs. Eichstaedt's address is 2516 Nordman Ave., New Smyrna Beach, Florida 32168.  Mrs. Eichstaedt is a plaintiff in this matter and the Administrator of the estate of her deceased son, Earl F. Cartrette, Jr.  Mrs. Eichstaedt will testify concerning her son's life, his decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996.  Mrs. Eichstaedt will also testify concerning  the attention her son's death generated from the government, the media, and from people all over the world.  Mrs. Eichstaedt will also describe for the Court her relationship with her son, Earl F. Cartrette, Jr.  Moreover, Mrs. Eichstaedt will explain to the Court the devastating effects her

son's death has had on her own life and her family's life.  Mrs. Eichstaedt's testimony will last about two hours.

T.    *Judy Lester*:  Mrs. Lester's address is P.O. Box 91, Rt. 97, Wyoming, West Virginia 24898.  Mrs. Lester is a plaintiff in this matter and is the mother of decedent Christopher Lester.  Mrs. Lester will testify concerning her son's life, his decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996.  Mrs. Lester will also testify concerning the attention her son's death generated from the government, the media, and from people all over the world.  She will also describe for the Court her relationship with her son.  Moreover, Mrs. Lester will explain the devastating effects her son's death has had on her own life.  Mrs. Lester's testimony will last no more than 90 minutes.

U.    *Cecil H. Lester*:  Mr. Lester's address is P.O. Box 91, Rt. 97, Wyoming, West Virginia 24898.  Mr. Lester is a plaintiff in this matter and the Administrator of the estate of his deceased son, Christopher Lester.  Mr. Lester will testify concerning his son's life, decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996.  Mr. Lester will also testify concerning the attention his son's death generated from the government, the media, and from people all over the world.  He will also describe for the Court his relationship with Christopher.  Moreover, Mr. Lester will explain the devastating effects his son's death has had on his own life.  Mr. Lester's testimony will last no more than 90 minutes.

V.    *Cecil H. Lester, Jr.*:  Cecil Lester's address is P.O. Box 91, Rt. 97, Wyoming, West Virginia 24898.  Cecil Lester is a plaintiff in this matter and is the brother of decedent Christopher Lester.  He is expected to testify that he and his brother Christopher were extremely

close.   Cecil Lester will describe the deep sense of loss he experienced at the time of Christopher's death, the way that the news of his death affected him, and the grief that he still experiences on a daily basis.  Cecil Lester's testimony will last no more than 60 minutes.

W.    *Jessica F. Lester*:  Jessica Lester's address is P.O. Box 91, Rt. 97, Wyoming, West Virginia 24898.  Jessica Lester, a minor, by and through her legal guardians, Cecil and Judy Lester, is a plaintiff in this matter and is the sister of decedent Christopher Lester.  She is expected to testify that she and her brother Christopher were extremely close.  Jessica Lester will describe the deep sense of loss she experienced at the time of Christopher's death, the way that the news of his death affected her, and the grief that she still experiences on a daily basis. Jessica Lester's testimony will last no more than 30 minutes.

X.    *Catherine Fennig*:  Mrs. Fennig's address is 5236 Lynn Road, Greendale, Wisconsin 53129.  Mrs. Fennig is a plaintiff in this matter and the mother of decedent Patrick P. Fennig.  Mrs. Fennig will testify concerning her son's life, decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996. Mrs. Fennig will also testify concerning the attention her son's death generated from the government, the media, and from people all over the world.  She will also describe for the Court her relationship with her son.  Moreover, Mrs. Fennig will explain the devastating effects her son's death has had on her own life.  Mrs. Fennig's testimony will last no more than 90 minutes.

Y.    *Mark Fennig*:  Mark Fennig's address is 495 Rustic Lane, Hartland, Wisconsin 53029.  Mark Fennig is a plaintiff in this matter and is a brother of decedent Patrick P. Fennig. He is expected to testify that he and his brother Patrick were extremely close.  Mark Fennig will describe the deep sense of loss he experienced at the time of Patrick's death, the way that the

news of his death affected him, and the grief that he still experiences on a daily basis. Mark Fennig's testimony will last no more than 60 minutes.

Z.    *Paul Fennig*:  Paul Fennig's address 8535 West Beecher Street, West Allis, Wisconsin 53227.  Paul Fennig is a plaintiff in this matter and is a brother of decedent Patrick P. Fennig.  He is expected to testify that he and his brother Patrick were extremely close.  Paul Fennig will describe the deep sense of loss he experienced at the time of Patrick's death, the way that the news of his death affected him, and the grief that he still experiences on a daily basis. Paul Fennig's testimony will last no more than 60 minutes.

AA.    *Thaddeus C. Fennig*:  Mr. Fennig's address is address is 5236 Lynn Road, Greendale, Wisconsin 53129.  Mrs. Fennig is a plaintiff in this matter and the Administrator of the estate of his deceased son, Patrick P. Fennig.  Mr. Fennig will testify concerning his son's life, decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996.  Mr. Fennig will also testify concerning the attention his son's death generated from the government, the media, and from people all over the world. He will also describe for the Court his relationship with Patrick.  Moreover, Mr. Fennig will explain the devastating effects his son's death has had on his own life.  Mr. Fennig's testimony will last no more than two hours.

BB.    *Catherine Adams*:  Mrs. Adams lives at 63 Pennsylvania Ave., Long Beach, New York 11561.  Mrs. Adams is a plaintiff in this matter and the Administrator of the estate of her deceased son, Christopher Adams.  Mrs. Adams will testify concerning her son's life, decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996.  Mrs. Adams will also testify concerning the attention her son's death generated from the government, the media, and from people all over the world.  She will also

describe for the Court her relationship with Christopher. Moreover, Mrs. Adams will explain the devastating effects her son's death has had on her own life. Mrs. Adam's testimony will last no more than 60 minutes.

CC.    *Mary Young*: Mrs. Young lives at 52 Lourae Dr., Massapequa, New York 11762. Mrs. Young is a plaintiff in this matter and a sister of decedent Christopher Adams. Mrs. Young is expected to testify that she and her brother Christopher were extremely close. She will describe the deep sense of loss she experienced at the time of Christopher's death, the way that the news of his death affected her, and the grief that she still experiences on a daily basis. Mrs. Young's testimony will last no more than 60 minutes.

DD.    *Michael Adams*: Michael Adams lives at 107 Julia Circle, Davidson, North Carolina 28036. Michael Adams is a plaintiff in this matter and a brother of decedent Christopher Adams. Michael Adams is expected to testify that he and his brother Christopher were extremely close. Michael Adams will describe the deep sense of loss he experienced at the time of Christopher's death, the way that the news of his death affected him, and the grief that he still experiences on a daily basis. Michael Adams' testimony will last no more than 60 minutes.

EE.    *John Adams*: John Adams lives at 9230 Ravenwing Drive, Charlotte, North Carolina 28262. John Adams is a plaintiff in this matter and a brother of decedent Christopher Adams. John Adams is expected to testify that he and his brother Christopher were extremely close. John Adams will describe the deep sense of loss he experienced at the time of Christopher's death, the way that the news of his death affected him, and the grief that he still experiences on a daily basis. John Adams' testimony will last no more than 60 minutes.

FF.    *Daniel Adams*: Daniel Adams lives at 63 Pennsylvania Avenue, Long Beach, New York 11561. Daniel Adams is a plaintiff in this matter and a brother of decedent

Christopher Adams.  He is expected to testify that he and his brother Christopher were extremely close.  Daniel Adams will describe the deep sense of loss he experienced at the time of Christopher's death, the way that the news of his death affected him, and the grief that he still experiences on a daily basis.  Daniel Adams' testimony will last no more than 60 minutes.

GG.    *William Adams*:  William Adams lives at 486 37th Street, Lindenhurst, New York 11757.  William Adams is a plaintiff in this matter and a brother of decedent Christopher Adams. He is expected to testify that he and his brother Christopher were extremely close.  He will describe the deep sense of loss he experienced at the time of Christopher's death, the way that the news of his death affected him, and the grief that he still experiences on a daily basis. William Adams's testimony will last no more than 60 minutes.

HH.    *Elizabeth Wolf*:  Mrs. Wolf lives at 25 Delta Road, Massapequa, New York 11758.  Mrs. Wolf is a plaintiff in this matter and a sister of decedent Christopher Adams.  Mrs. Wolf is expected to testify that she and her brother Christopher were extremely close.  She will describe the deep sense of loss she experienced at the time of Christopher's death, the way that the news of his death affected her, and the grief that she still experiences on a daily basis.  Mrs. Wolf's testimony will last no more than 60 minutes.

II.    *Patrick Adams*:  Patrick Adams lives at 9101 Eaker Court, Charlotte, North Carolina 28215.  Patrick Adams is a plaintiff in this matter and a brother of decedent Christopher Adams.  He is expected to testify that he and his brother Christopher were extremely close. Patrick Adams will describe the deep sense of loss he experienced at the time of Christopher's death, the way that the news of his death affected him, and the grief that he still experiences on a daily basis.  Patrick Adams' testimony will last no more than 60 minutes.

JJ.     *Gary Heiser*:  Mr. Heiser's address is 10 Live Oak Lane, Palm Coast, Florida 32137.  Mr. Heiser is a plaintiff in this matter and the co-Administrator of the estate of his deceased son, Michael G. Heiser.  Mr. Heiser will testify concerning his son's life, decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996.  Mr. Heiser will also testify concerning the attention his son's death generated from the government, the media, and from people all over the world.  He will also describe for the Court his relationship with Michael.  Moreover, Mr. Heiser will explain the devastating effects his son's death has had on his own life.  Mr. Heiser's testimony will last no more than 90 minutes.

KK.     *Frances Heiser*:  Mrs. Heiser's address is 10 Live Oak Lane, Palm Coast, Florida 32137.  Mrs. Heiser is a plaintiff in this matter and the co-Administrator of the estate of her deceased son, Michael G. Heiser.  Mrs. Heiser will testify concerning her son's life, decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996.  Mrs. Heiser will also testify concerning the attention her son's death generated from the government, the media, and from people all over the world.  She will also describe for the Court her relationship with Michael.  Moreover, Mrs. Heiser will explain the devastating effects her son's death has had on her own life.  Mrs. Heiser's testimony will last no more than 90 minutes.

LL.     *Ibis Haun*:  Ibis Haun lives at 326 Cocoa Isles Boulevard, Cocoa Beach, Florida 32931.  Mrs. Haun is a plaintiff in this matter and the Administrator of the estate of her deceased husband, Leland Timothy Haun.  She will testify concerning her husband's life, his decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996.  Mrs. Haun will also testify concerning the attention her husband's death

generated from the government, the media, and from people all over the world.  Mrs. Haun will also describe for the Court her relationship with her husband.  Moreover, she will explain to the Court the devastating effects her husband's death has had on her own life and her children's lives.  Mrs. Haun's testimony will last about 90 minutes.

MM.  *Milagritos Perez-Dalis*:  Ms. Perez-Dalis lives at 438 E. Prince Road, #218, Tucson, Arizona 85705.  Ms. Perez-Dalis is a plaintiff in this matter and the stepdaughter of decedent Leland Timothy Haun.  She is expected to testify that she and her stepfather were extremely close.  Ms. Perez-Dalis will describe the deep sense of loss she experienced at the time of her stepfather's death, the way that the news of his death affected her, and the grief that she still experiences on a daily basis.  Ms. Perez-Dalis' testimony will last no more than 60 minutes.

NN.    *Steve K. Kitson*:  Mr. Kitson resides at 209 W. Parkland Drive, Yukon, Oklahoma 73099.  Mr. Kitson is a plaintiff in this matter and the brother of decedent Kendall Kitson, Jr.  He is expected to testify that he and his brother Kendall were extremely close.  Mr. Kitson will describe the deep sense of loss he experienced at the time of Kendall's death, the way that the news of his death affected him, and the grief that he still experiences on a daily basis.  Steve Kitson's testimony will last about 60 minutes.

OO    *Nancy A. Kitson*:  Nancy Kitson resides at 320 East Wagner Road, Yukon, Oklahoma 73099.  Nancy Kitson is a plaintiff in this matter and the sister of decedent Kendall Kitson, Jr..  She is expected to testify that she and her brother Kendall were extremely close.  Nancy Kitson will also describe the deep sense of loss she experienced at the time of Kendall's death, the way that the news of his death affected him, and the grief that she still experiences on a daily basis.  Nancy Kitson's testimony will last 60 minutes.

PP.    *Vicki L. Taylor*:    Mrs. Taylor's address is 23878 Runway Circle, Douglass, Kansas 67039.  Mrs. Taylor is a plaintiff in this matter and the co-Administrator of the estate of her deceased son, Jeremy A. Taylor.  Mrs. Taylor will testify concerning her son's life, his decision to join the Air Force, his service in the Air Force, and the events that led to his death. Mrs. Taylor will also testify concerning the attention her son's death generated from the government, the media, and from people all over the world.  Mrs. Taylor will describe for the Court the devastating effects her son's death has had on her own life and that of her family.  Mrs. Taylor's testimony will last no more than 90 minutes.

QQ.    *Sandra M. Wetmore*:    Mrs. Wetmore's address is 148 Pinedale Road, Debary, Florida 32713.   Mrs. Wetmore is a plaintiff in this matter and the Administrator of the estate of her deceased son, Brian McVeigh.  Mrs. Wetmore will testify concerning her son's life, his decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996.  Mrs. Wetmore will also testify concerning the attention her son's death generated from the government, the media, and from people all over the world.  Mrs. Wetmore will also describe for the Court her relationship with Brian.  Moreover, Mrs. Wetmore will explain to the Court the devastating effects her son's death has had on her own life.  Mrs. Wetmore's testimony will last about two hours.  Plaintiffs may show a video of Mrs. Wetmore's deposition to the Court if she is unavailable to testify at trial.

RR.    *James Wetmore*:    Mr. Wetmore's address is 148 Pinedale Road, Debary, Florida 32713.  Mr. Wetmore is a plaintiff in this matter and the stepfather of decedent Brian McVeigh. He is expected to testify that he and his stepson were extremely close.  Mr. Wetmore will describe the deep sense of loss he experienced at the time of his stepson's death, the way that the news of his death affected him, and the grief that he still experiences on a daily basis.  Mr.

Wetmore's testimony will last no more than 60 minutes. Plaintiffs may show a video of Mr. Wetmore's deposition to the Court if he is unavailable to testify at trial.

SS. *Richard W. Wood*: Mr. Wood's address is 1341 Lorry Avenue, Modesto, California 95355. Mr. Wood is a plaintiff in this matter and the Administrator of the estate of his deceased son, Justin R. Wood. Mr. Wood will testify concerning his son's life, decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996. Mr. Wood will also testify concerning the attention his son's death generated from the government, the media, and from people all over the world. He will also describe for the Court his relationship with Justin. Moreover, Mr. Wood will explain the devastating effects his son's death has had on his own life. Mr. Wood's testimony will last no more than two hours.

TT. *Shawn Wood*: Shawn Wood lives at 3717 Sharpsburg Drive, Modesto, California 95357. Shawn Wood is a plaintiff in this matter and a brother of decedent Justin R. Wood. He is expected to testify that he and his brother Justin were extremely close. Shawn Wood will describe the deep sense of loss he experienced at the time of Justin's death, the way that the news of his death affected him, and the grief that he still experiences on a daily basis. Shawn Wood's testimony will last no more than 60 minutes.

UU. *Kathleen Wood*: Mrs. Wood's address is 1341 Lorry Avenue, Modesto, California 95355. Mrs. Wood is a plaintiff in this matter and the mother of decedent Justin R. Wood. Mrs. Wood will testify concerning her son's life, his decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996. Mrs. Wood will also testify concerning the attention her son's death generated from the government, the media, and from people all over the world. She will also describe for the Court

her relationship with Justin.  Moreover, Mrs. Wood will explain the devastating effects her son's death has had on her own life.  Mrs. Wood's testimony will last about 60 minutes.

VV.    *Marie Campbell*:    Marie Campbell's address is 1801 Scout's Vista, #524, Arlington, Texas 76006.   Marie Campbell is a plaintiff in this matter and the expected Administrator of the estate of her deceased husband, Millard D. Campbell.  She will testify concerning her husband's life, his decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996.  Marie Campbell will also testify concerning the attention her husband's death generated from the government, the media, and from people all over the world.   Marie Campbell will also describe for the Court her relationship with her husband.  Moreover, she will explain to the Court the devastating effects her husband's death has had on her own life.  Marie Campbell's testimony will last about 90 minutes.

WW.    *Bessie Campbell*:    Bessie Campbell's address is 1753 Henderson Road, Apt. 6, Angleton, Texas 77515.  Bessie Campbell is a plaintiff in this matter and the mother of decedent Millard D. Campbell.  Bessie Campbell will testify concerning her son's childhood, his decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996.  She will also describe for the Court her relationship with Millard.  Moreover, Bessie Campbell will explain the devastating effects her son's death has had on her own life.  Bessie Campbell's testimony will last about 90 minutes.

XX.    *Bridget Brooks*:    Bridget Brook lives at 432 Barbados Way, Niceville, Florida 32578.  Mrs. Brooks is a plaintiff in this matter and the Administrator of the estate of his deceased son, Joseph E. Rimkus.  Mrs. Brooks will testify concerning her son's life, decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar

Towers in June 1996. Mrs. Brooks will also testify concerning the attention her son's death generated from the government, the media, and from people all over the world. She will also describe for the Court her relationship with Joseph. Moreover, Mrs. Brooks will explain the devastating effects her son's death has had on her own life. Mrs. Brooks' testimony will last no more than two hours.

YY. *James Rimkus*: James Rimkus lives at 3172 Forrest Avenue, Crestview, Florida 32539. James Rimkus is a plaintiff in this matter and the brother of decedent Joseph E. Rimkus. He is expected to testify that he and his brother Joseph were extremely close. James Rimkus will describe the deep sense of loss he experienced at the time of Joseph's death, the way that the news of his death affected him, and the grief that he still experiences on a daily basis. James Rimkus' testimony will last no more than 60 minutes.

ZZ. *Anne Rimkus*: Anne Rimkus lives at 411 NE 4th Street, Gainesville, Florida 32605. Anne Rimkus is a plaintiff in this matter and the sister of decedent Joseph E. Rimkus. She is expected to testify that she and her brother Joseph were extremely close. Anne Rimkus will describe the deep sense of loss she experienced at the time of Joseph's death, the way that the news of his death affected her, and the grief that she still experiences on a daily basis. Anne Rimkus' testimony will last no more than 60 minutes.

AAA. *Dawn Woody*: Dawn Woody resides at 1405 N.W. 179th Street, Edmond, Oklahoma 73003. Dawn Woody is a plaintiff in this matter and the Administrator of the estate of her deceased husband, Joshua E. Woody. She will testify concerning her husband's life, his decision to join the Air Force, his service in the Air Force, and the events that led to his death at the Khobar Towers in June 1996. Dawn Woody will also testify concerning the attention her husband's death generated from the government, the media, and from people all over the world.

Dawn Woody will also describe for the Court her relationship with her husband.  Moreover, she will explain to the Court the devastating effects her husband's death has had on her own life. Dawn Woody's testimony will last about 90 minutes.

BBB.  *Bernadine Beekman*:    Mrs. Beekman lives at 3720 Verona Caney Road, Lewisburg, Tennessee 37091.  Mrs. Beekman is a plaintiff in this matter and is the mother of decedent Joshua E. Woody.  Mrs. Beekman will testify concerning her son's childhood and decision to join the Air Force.  She will also describe for the Court her relationship with her son. Moreover, Mrs. Beekman will explain the devastating effects her son's death has had on her own life.  Mrs. Beekman's testimony will last about 60 minutes.

CCC.  *Jonica Woody*:  Jonica WoodY lives at 1510 Fallstone Lane, Crofton, Maryland 21114.  Jonica Woody is a plaintiff in this matter and a sister of decedent Joshua E. Woody.  She is expected to testify that she and her brother Joshua were extremely close.  Jonica Woody will describe the deep sense of loss she experienced at the time of Joshua's death, the way that the news of his death affected her, and the grief that she still experiences on a daily basis.  Jonica Woody's testimony will last about 40 minutes.

DDD.  *Timothy Woody*:  Timothy Woody lives at 90 Norwood Avenue, Geneva, New York 14456.  Timothy Woody is a plaintiff in this matter and a brother of decedent Joshua E. Woody.  He is expected to testify that he and his brother Joshua were extremely close.  Timothy Woody will describe the deep sense of loss he experienced at the time of Joshua's death, the way that the news of his death affected him, and the grief that he still experiences on a daily basis. Timothy Woody's testimony will last about 40 minutes.

EEE.  *Tracy Smith*:  Tracy Smith lives at 135 Beech Creek Court, Kennesaw, Georgia 30152.  Tracy Smith is a plaintiff in this matter and a sister of decedent Joshua E. Woody.  She is

expected to testify that she and her brother Joshua were extremely close.  Tracy Smith will describe the deep sense of loss she experienced at the time of Joshua's death, the way that the news of his death affected her, and the grief that she still experiences on a daily basis.  Tracy Smith's testimony will last about 40 minutes.

FFF.  *George Beekman*:  Mr. Beekman lives at 3720 Verona Caney Road, Lewisburg, Tennessee 37091.  Mr. Beekman is a plaintiff in this matter and is the stepfather of decedent Joshua E. Woody.  Mr. Beekman will testify concerning his relationship with his stepson Joshua. Mr. Beekman will explain the devastating effects his stepson's death has had on his own life, and his family's effort to keep Joshua's memory alive.  Mr. Beekman's testimony will last about 40 minutes.

GGG.  *Dr. Herman Miller\**:  Dr. Miller is an economic consultant at 105 Bluff Terrace, Silver Spring, Maryland 20902.  Dr. Miller will testify concerning the economic loss to the Estates of decedents, Adams, Campbell, Cartrette, Fennig, Haun, Heiser, Johnson, Kitson, Lester, Marthaler, McVeigh, Morgera, Nguyen, Rimkus, Taylor, Wood, and Woody.  Dr. Miller will explain his reports to the Court summarizing the economic damages that resulted from the Decedents' premature and unexpected deaths.  Dr. Miller has testified as an expert in numerous wrongful death suits, including several FSIA suits, e.g., *Stethem v. Islamic Republic of Iran*, Civil Action No. 00-0159 (D.D.C. April 19, 2002) and *Higgins v. Islamic Republic of Iran*, Civil Action No. 1:99-00377 (D.D.C. September 21, 2000).  Dr. Miller's testimony will last no more than 90 minutes.

HHH.  *Dr. Thomas R. Parsons\**:  Dr. Parsons, a board certified forensic pathologist, is employed as an Associate Medical Examiner, District 7 – Volusia County, 1360 Indian Lake Road, Daytona Beach, Florida 32124.  At the time of the bombing of the Khobar Towers, Dr.

Parsons was on active duty as a Major in the United States Air Force and held the position of Associate Medical Examiner at the Armed Forces Institute of Pathology, Washington, D.C. Dr. Parsons performed the autopsies on a number of the officers and airmen killed at the Khobar Towers, and as to those of the officers and airmen whose autopsies he did not perform, he has examined all of the autopsy reports. Dr. Parsons will testify concerning the autopsies performed on the Decedents. He will also testify concerning the nature and extent of the pain and suffering experienced by a number of the Decedents prior to their deaths. Dr. Parsons' testimony should last no more than 90 minutes.

III.    *Dr. Dana G. Cable\**:  Dr. Cable is a licensed psychologist, a certified death educator, and a certified grief therapist at P.O. Box 720, Frederick, Maryland 21755. Dr. Cable will testify concerning the grief process and the factors which cause it to be more extensive and intensive. Dr. Cable will testify concerning the impact of the Decedents' deaths had on their families. Dr. Cable's testimony should last about two hours.

## VI.    LIST OF EXHIBITS

Counsel for plaintiffs are still gathering documentary evidence from various sources, including the U.S. government and military. Consequently, Plaintiffs will submit to the Court a completed exhibit list by no later than five days before trial. In addition to documentary exhibits, Plaintiffs intend to show to the Court a video montage of the bombing and the Decedents at the outset of trial as part of Plaintiffs' counsel's opening statement. Finally, Plaintiffs have attached a chart summarizing many of the FSIA cases brought against Iran and decided by this Court since 1998. *See* Exhibit I.

## VII.    DESIGNAGTION OF DEPOSITION

The Plaintiffs may offer the video or telephone depositions of Dr. Patrick Clawson, Sandra M. Wetmore, and James V. Wetmore if they are unavailable to testify at trial.  It is also possible that some of the family members listed as actual witnesses may not be able to come to the trial.  If that proves to be the case, their video or telephone depositions or affidavits will be submitted at trial.  The use of affidavits has been approved by the Court in *Stern v. Islamic Republic of Iran*, 271 F. Supp.2d 286 (D.D.C. July 17, 2003). A transcript of the depositions and affidavits will be provided to the Court in the Plaintiffs' exhibit binders.

## VIII.   ITEMIZATION OF DAMAGES

### A.    Introduction

In addition to eliminating sovereign immunity for state sponsors of terrorism, Congress provided a mechanism by which successful plaintiffs may recover damages awarded under Section 1605(a)(7) of the FSIA.  Section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322 (2002), provides, in pertinent part, that:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Section 2002(a) of Title II of the TRIA, Pub. L. No. 107-297, 116 Stat. 2322 (2002).  Thus, the TRIA provides one method by which successful plaintiffs may recover damages awarded under 28 U.S.C. § 1605(a)(7) of the FSIA.

B.    **Compensatory Damages**

Plaintiffs [4] seek compensatory damages for wrongful death, survival damages, economic damages, intentional infliction of emotional distress, loss of consortium, and solatium.  The courts that have interpreted the FSIA have awarded compensatory damages for similar causes of action, and the amount awarded in each of these cases is set forth in Exhibit G.  Although the Plaintiffs agree with the method of damages analyses in those cases and agree that a similar approach should be used to compensate them, Plaintiffs assert that they are entitled to an even greater award of compensatory damages because of the particularly gruesome facts of the bombing of the Khobar Towers and the incredible media attention surrounding the deaths of the Decedents.

(i)    Wrongful Death

The Plaintiffs seeks compensatory damages arising from the wrongful deaths of the Decedents.  The Plaintiffs submit that each plaintiff should be awarded $20,000,000.

(a)    Economic Damages

The Plaintiffs' expert, Dr. Herman Miller, will testify concerning the loss of earnings to each Decedent's Estate.  Dr. Miller's expert reports summarize the loss that has resulted from the Decedents' unexpected and sudden deaths.

(b)    Intentional Infliction of Emotional Distress

At trial, Plaintiffs will testify that they suffered extreme emotional distress, mental anguish, and emotional pain and suffering as a result of the willful, wrongful, and intentional

---

[4]    Some of the Plaintiffs are the stepparents and stepchildren of several of the Decedents.  These stepparents and stepchildren may recover damages under the FSIA because, as the evidence will demonstrate, they are the functional equivalents of parents and children of the Decedents.  *See* Bench

*(footnote continued to next page)*

bombing of the Khobar Towers, which resulted in the deaths of the Decedents. Plaintiffs submit that they should be awarded $20,000,000 each.

(c)    <u>Loss of Consortium</u>

Consortium is defined as "conjugal fellowship of husband and wife, and the right of each to the company, society, co-operation, affection, and aid of the other in every conjugal relation." *See* BLACK'S LAW DICTIONARY 309 (6th ed. 1990). "Loss of 'consortium' consists of several elements, encompassing not only material services but such intangibles as society, guidance, companionship, and sexual relations." *Id; see also Kerr v. Islamic Republic of Iran*, 245 F. Supp.2d 59, 63-64 (D.D.C. February 11, 2003)(TPJ) (awarding wife of decedent $10,000,000 for loss of consortium). At all relevant times, Plaintiffs Marie R. Campbell, Ibis S. Haun, Shyrl L. Johnson, Katie L. Marthaler, and Dawn Woody were married to Decedents Campbell, Haun, Johnson, Marthaler, and Woody respectively. As a direct and proximate result of the willful, wrongful, and intentional bombing of the Khobar Towers by members of Hizbollah, Marie R. Campbell, Ibis S. Haun, Shyrl L. Johnson, Katie L. Marthaler, and Dawn Woody are forevermore deprived of the love, assistance, society, companionship, and consortium of their husbands who were killed as a result of the bombing. This Court should award $10,000,000 each to Plaintiffs Marie R. Campbell, Ibis S. Haun, Shyrl L. Johnson, Katie L. Marthaler, and Dawn Woody.

---

*(footnote continued from previous page)*
Memorandum In Support Of Finding That Stepparents and Stepchildren May Recover Damages Under The Foreign Sovereign Immunities Act, attached hereto as Exhibit F.

(d)     <u>Solatium</u>

Solatium is defined as "compensation damages allowed for injury to feelings." *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 30 (D.D.C. 1998) (citing BLACK'S LAW DICTIONARY 1391 (6th ed. 1990)). "The mental anguish, bereavement and grief resulting from the fact of decedent's death constitutes the preponderant element of a claim solatium." *Id.* Spouses, parents, children and siblings of the decedent are presumed to suffer mental anguish and their testimony is ordinarily sufficient to sustain their claims for solatium. *Id.*

The family members here all suffered, and continue to suffer, severe mental anguish and grief as a result of unexpected and wrongful and intentional killing of Decedents. In addition to the unimaginable circumstances that led to Decedents' deaths, the Plaintiffs were bombarded with attention from the media and the country as a whole in response to the bombing of the Khobar Towers and the subsequent funerals of the Decedents. Decedents were officers and airmen in the U.S. Air Force, and their deaths at the hands of the terrorists because they were Americans and in the United States military, resulted in an unusual amount of attention from our government as well as scholars and others from around the world.

Indeed, the Plaintiffs, to this day, are constantly reminded of the bombing. Most of the family members have attended memorials services on military bases as well as in their home towns. Many of the family members visit the gravesite of their loved-one regularly and have dedicated significant time and resources to keep alive the memory of those who died as a result of the bombing of Khobar Towers. Moreover, the family members are constantly reminded of the cruelty and pointlessness of terrorism because of the ongoing war of terrorism. Plaintiffs submit that an award of $20,000,00 to each plaintiff for loss of solatium is appropriate under the circumstances.

(ii)    <u>Survival Action / Pain and Suffering</u>

The Plaintiffs' expert, Dr. Thomas R. Parsons, will testify at trial that certain of the Decedents did not die instantaneously from the explosion and experienced unimaginable pain and suffering prior to their deaths.  Where a Decedent suffered pain and suffering prior to dying, Plaintiffs submit that the Decedent's Estate should be awarded $20,000,000.

**C.    Punitive Damages**

Plaintiffs also seek an award of punitive damages.  The FSIA provides that an "agency or instrumentality" of a foreign state, unlike the foreign state itself, can be held liable for punitive damages.  Section 1606 of the FSIA provides that "[a]s to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages. . . . "  28 U.S.C. §1606.

In 1996, Congress amended section 1605 of the FSIA to create a cause of action against foreign nations that are "state sponsors" of terrorism for United States citizens who are injured or killed by terrorist acts.  <u>See</u> 28 U.S.C. §1605(a)(7).  Seeking to "expand[ ] the scope of monetary damage awards available to American victims of international terrorism," the Conference of the United States House of Representatives added language to provide explicitly for punitive damages against agents or instrumentalities of state sponsors of terrorism.  H.R. CONF. REP. No. 104-863 at 985 (1996).

The FSIA defines "agency or instrumentality" of a foreign state as any entity:

(1)  which is a separate legal person, corporate or otherwise, and

(2)  which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3)  which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. §1603(b).  Thus, an "agent" of a foreign state need not be an individual and may be a political body.

MOIS and IRGC are clearly agents of Iran under Section 1603 of the FSIA.  As set forth in the complaint, and as testimony at trial will demonstrate, MOIS and IRGC funded, trained, and directed Hizbollah in its terrorist activities in Lebanon.  Thus, the statute authorizes an award of punitive damages.  *See* Bench Memorandum In Support Of Conclusion That The Foreign Sovereign Immunities Act Authorizes Punitive Damages Against Agents and  Instrumentalities Of Foreign States, attached hereto as Exhibit G.

Moreover, many other cases have imposed punitive damages against MOIS and IRGC.  For example, in *Flatow,* 999 F. Supp. 1, this Court held MOIS liable for punitive damages under the same Amendment.  The *Flatow* court concluded that it could assess punitive damages against MOIS because MOIS satisfied the statutory definition of an "agency or instrumentality" of a foreign state.  *See id.*  Accordingly, this Court ordered MOIS, but not Iran itself, to pay $225 million in punitive damages*. Id.* at 34.  *See also Surette v. Islamic Republic of Iran*, Civil Action No. 01-0570 (D.D.C. November 1, 2002) (awarding punitive damages against IRGC); *Higgins v. Islamic Republic of Iran*, Civil Action No. 99-0377 (D.D.C. September 21, 2000) (same).

The purpose of punitive damages is to punish wrongful conduct, namely "to prevent its repetition by the offender and to deter others who might choose to emulate it."  *Anderson*, 90 F.

Supp. at 114.  An award should be in an amount that is just and appropriate to punish MOIS and to deter future acts of terrorism.  Id.

  For these same reasons, the Court should award punitive damages in this case.  The Court will hear testimony from Dr. Patrick Clawson that the imposition of punitive damages may well have a positive effect on MOIS, IRGC, and Iran.  MOIS, IRGC, and Iran must be punished for their role in the horrible acts that took place against the Decedents and the Plaintiffs in this case. A large punitive damages award will serve that purpose.

## IX.    ESTIMATED LENGTH OF TRIAL

  Due to the large number of claimants, Plaintiffs estimate that the trial will take fifteen days (3 weeks) to complete their case.

Dated:  October 30, 2003.

                    Respectfully submitted,


                    _____
                    Shale D. Stiller, D.C. Bar No. MD00772
                    Kurt J. Fischer (to be admitted *pro hac vice*)
                    Adam S. Hoffinger, D.C. Bar No. 431711
                    Elizabeth R. Dewey, D.C. Bar No. 445334
                    Louis J. Rouleau, D.C. Bar No. MD14857
                    Hank B. Walther, D.C. Bar No. 477218

                    PIPER RUDNICK LLP
                    1200 Nineteenth Street, N.W.
                    Washington, D.C. 20036-2412
                    Tel: (202) 861-3900
                    Fax: (202) 223-2085

                    Of Counsel:

                    Joshua M. Ambush, Esq.
                    600 Reistertown Rd., #200A
                    Baltimore, MD 21208

Helen-Louise Hunter, Esq.
5340 Westpath Way
Bethesda, MD 21208

Attorneys for Plaintiffs