UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF MICHAEL HEISER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN, et al., <br><br> Defendants. | Civil Action No. 00-2329 <br> RCL/DAR |
| ESTATE OF MILLARD D. CAMPBELL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN, et al., <br><br> Defendants. | Civil Action No. 01-2104 <br> RCL/DAR |

## REPORT AND RECOMMENDATION

The 76 Plaintiffs in these consolidated actions are the family members and estates of 17 of the 19 servicemen killed as a consequence of the June, 1996 bombing at Khobar Towers, a residence on a United States military base in Dhahran, Saudi Arabia. Defendants have included, at various times relevant to the instant Report and Recommendation, the Islamic Republic of Iran; the Iranian Ministry of Information and Security; the Islamic Revolutionary Guard Corps; "Hizballah"; Osama Bin Laden, and "John Does 1-99[.]" At various times relevant to the instant Report and Recommendation, Plaintiffs have relied upon causes of action founded upon, among other provisions, the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605(a)(7).

Heiser, et al. v. Islamic Republic of Iran, et al.                                           2
Campbell, et al. v.  Islamic Republic of Iran, et al.

These consolidated actions were referred by the court (Jackson, J.) to the undersigned

United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) "to hear and determine

pretrial matters as permitted thereby, and pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct

hearings upon such schedule as she shall prescribe, thereafter to submit to the Court her proposed

findings of fact and recommendations for disposition by the Court of any motion for judgment by

default upon the evidence submitted in accordance with 28 U.S.C. § 1608(e)."  May 14, 2003

Order (Docket No. 20) at 1-2; see August 22, 2003 Order (Docket No. 25) at 1 (denying

Plaintiffs' motion to reconsider the referral and request for a trial date).[1]  A hearing with respect

to liability and damages commenced on December 2, 2003, and continued through December 19,

2003, then resumed on February 5, 2004 and concluded on February 10, 2004.

Little discussion is included herein of the nature and extent of the damages suffered by

the deceased servicemen, their surviving family members and their estates.  The testimony and

other evidence with respect to the nature and extent of these damages was as graphic as any

account of the brutality of combat; the grief still borne by the surviving family members was so

palpable that boxes of tissues became courtroom fixtures.  The undersigned's attention to issues

involving jurisdiction, causes of action and the evidence with respect to liability is not in

derogation of, nor intended to minimize, the crushing nature and extent of the damages; rather, it

is recognition that in this circumstance, the court's authority to award damages is necessarily

predicated upon a determination that Plaintiffs have "established [their] claim or right to relief by

evidence that is satisfactory to the Court."  See, e.g., Haim v. Islamic Republic of Iran, No. 02-

---

[1]  Unless otherwise indicated, a citation to "Docket No." is to the ECF entries in Civil Action No. 00-2329.

Heiser, et al. v. Islamic Republic of Iran, et al.                                                3
Campbell, et al. v.  Islamic Republic of Iran, et al.

1811, 2006 U.S. Dist. LEXIS 12816, at *3 (D.D.C. March 24, 2006) (citation omitted).

Upon consideration of all of the evidence with respect to liability in the context of the evolving body of law governing actions for damages against foreign states and their officials, agents and employees, the undersigned finds, for the reasons set forth herein, that Plaintiffs did not establish their claim or right to relief "by evidence that is satisfactory to the Court." Accordingly, the undersigned recommends that no default judgments be entered.

## PROCEDURAL HISTORY

*Second Amended Complaint*s

Plaintiffs describe themselves as "the Estates and family members" of 17 of the 19 servicemen who were killed when "[o]n June 25, 1996, Hizbollah terrorists detonated a 5,000 pound truck bomb outside of Khobar Towers, a United States military complex in Dhahran, Saudi Arabia."  Second Amended Complaints at 3.[2]  Plaintiffs describe the decedents as "victims of 'extrajudicial killing,' as that term is defined in section 3 of the Torture Victims Protection Act of 1991 (28 U.S.C. § 1350 note), pursuant to 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1)."  Id., ¶ 23.

In their second amended complaints, Plaintiffs named as Defendants (1) the Islamic Republic of Iran; (2) the Iranian Ministry of Information and Security ("MOIS"); (3) the Iranian Islamic Revolutionary Guard Corps ("IRGC" or "the Pasdaran"); (4) and "John Does 1-99[.]"

---

[2]  See Second Amended Complaint, Civil Action No. 00-2329 (Docket No. 19); Second Amended Complaint, Civil Action No. 01-2104 (Docket No. 16).

Heiser, et al. v. Islamic Republic of Iran, et al.                                                    4
Campbell, et al. v.  Islamic Republic of Iran, et al.

Second Amended Complaints, ¶1; see also id., ¶¶ 24, 25, 27, 29.   Plaintiffs alleged that all of the

Defendants "are subject to suit in the courts of the United States pursuant to the Foreign

Sovereign Immunities Act, as amended, 28 U.S.C. § 1605(a)(7)."  Id., ¶1.  Plaintiffs further

alleged that "[t]his court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C.  §§ 1330(a), 1331, and 1332(a)(2)[,]" and that "[v]enue is proper in this District Court

pursuant to 28 U.S.C. § 1391(f)(4)."  Id., ¶¶2, 3.  Finally, with respect to choice of law, Plaintiffs

alleged that "[a]ctions for wrongful death, personal injury, and related torts perpetrated by

foreign state sponsors of terrorism . . . are unique causes of actions arising out of federal counter-

terrorism statutes and are controlled by federal law."  Id., ¶4.

Plaintiffs sought damages for wrongful death (Count I); survival action (Count II);

"economic damages" (Count III); intentional infliction of emotional distress (Count IV); for

Plaintiffs  Ibis S. Haun, Marie R. Campbell, Shyrl L. Johnson, Katie L. Marthaler and Dawn

Woody, loss of consortium (Count V); solatium (Count VI); and "punitive damages" (Count

VII).

Plaintiffs requested judgment in their favor against all of the Defendants.  In addition, the

Plaintiffs in Civil Action No. 00-2329 sought compensatory damages against all Defendants in

the amount of $890,000,000 "plus economic damages in an amount to be determined at trial for

each of  Decedents' Estates"; punitive damages against Defendants MOIS, the IRGC and John

Does 1-99 in the amount of $500,000,000; and reasonable costs, expenses and attorneys' fees.

The Plaintiffs in Civil Action No. 01-2104 sought compensatory damages against all Defendants

in the amount of $3,660,000,000 "plus economic damages in an amount to be determined at trial

Heiser, et al. v. Islamic Republic of Iran, et al.                                    5
Campbell, et al. v.  Islamic Republic of Iran, et al.

for each of Decedents' Estates"; punitive damages against Defendants MOIS, the IRGC and

John Does 1-99 in the amount of $500,000,000; and reasonable costs, expenses and attorneys'

fees.


*Pre-Hearing Proceedings*

On February 1, 2002, the court (Jackson, J.) consolidated the two civil actions, and in

Civil Action No. 00-2329, granted the Plaintiffs' motion for entry of default as to Defendants

Islamic Republic of Iran, MOIS and the IRGC.  February 1, 2002 Order (Docket No. 9, Civil

Action No. 00-2329) at 1.  On February 6, 2002, the Clerk entered a default in Civil Action No.

00-2329 against Defendants Islamic Republic of Iran, MOIS and the IRGC.  Default (Docket No.

10, Civil Action No. 00-2329).

On July 30, 2002, both actions were referred to the undersigned for all purposes.  July 30,

2002 Order (Docket No. 11) at 1.  At a status hearing on September 30, 2002, the undersigned

scheduled the hearing on liability and damages for May 4, 2003.

On October 4, 2002, the undersigned granted the motion of Plaintiffs in Civil Action No.

01-2104 for entry of default as to Defendants Islamic Republic of Iran, MOIS and the IRGC.

October 4, 2002 Order (Docket No. 11, Civil Action No. 01-2104) at 1.  On October 8, 2002, the

Clerk entered a default in Civil Action No. 01-2104 against Defendants Islamic Republic of Iran,

MOIS and the IRGC.  Default (Docket No. 12, Civil Action No. 01-2104) at 1.

On March 14, 2003, Plaintiffs moved for a continuance of the hearing on liability and

damages.  Plaintiffs' counsel represented that counsel "has learned that certain immediate family

Heiser, et al. v. Islamic Republic of Iran, et al.                                                          6
Campbell, et al. v. Islamic Republic of Iran, et al.

members of the soldiers killed in the Khobar Towers terrorist attack -- family members who have

cognizable claims under the Foreign Sovereign Immunities Act ("FSIA") -- are not currently

named as parties in these consolidated actions."  Motion for Continuance of Trial Date and

Request for Scheduling Conference (Docket No. 16) at 2.  Counsel further represented that the

firm "is in the process of identifying all such family members and anticipates filing amended

complaints within the next several weeks."  Id.  The undersigned granted Plaintiffs' motion, and,

in accordance with the request of Plaintiffs' counsel, "tentatively" scheduled the  hearing for "the

period of December 1, 2003 to December 18, 2003[.]"  March 17, 2003 Order (Docket No. 17) at

1.  Plaintiffs filed their second amended complaints on May 6, 2003.

       Upon consideration of Plaintiffs' motions to vacate their consent to proceed before a

magistrate judge for all purposes and to clarify the purpose of the referral to a magistrate judge,

the court re-referred the consolidated civil actions to the undersigned United States Magistrate

Judge "to hear and determine pretrial matters as permitted thereby, and pursuant to 28 U.S.C. §

636(b)(1)(B), to conduct hearings, and to submit proposed findings and recommendations for the

disposition by the Court of any motion for judgment by default upon the evidence submitted in

accordance with 28 U.S.C. § 1608(e)."  (Docket No. 20) at 1-2.  The court denied Plaintiffs'

motion for clarification of the referral.  August 22, 2003 Order (Docket No. 25) at 1.

       On September 3, 2003, the undersigned scheduled the hearing on liability and damages

for December 1 through December 18, 2003.  September 3, 2003 Order (Docket No. 26) at 1.

       Plaintiffs filed their pretrial statement on October 31, 2003 (Docket No. 30).  In

accordance with the undersigned's Final Pretrial Order (Docket No. 32), Plaintiffs filed a

Heiser, et al. v. Islamic Republic of Iran, et al.                                        7
Campbell, et al. v.  Islamic Republic of Iran, et al.

memorandum regarding issues relevant to liability.  See Supplemental Bench Memorandum on

Liability Issues ("Memorandum on Liability") (Docket No. 33).  In the memorandum, Plaintiffs

stated that they "do not expect to identify [Defendants] John Does 1-99 before the

commencement of the trial[,]" and that "[a]ccordingly, Plaintiffs will not seek a finding of

liability against the co-conspirators John Does 1-99, who were named as defendants when the

complaints in this consolidated action were filed."  Memorandum on Liability at 9.

On November 19, 2003, Plaintiffs moved for entry of default against the Islamic Republic

of Iran, MOIS and the IRGC.  Plaintiffs' Motion for Entry of Default (Docket No. 38) at 1.  The

court (Jackson, J.) granted the motion.  November 26, 2003 Order (Docket No. 39, Civil Action

No. 00-2329; Docket No. 32, Civil Action No. 01-2104).

*Plaintiffs' Contentions Regarding Liability Prior to and During the December, 2003 Hearing on
    Liability and Damages*

Plaintiffs acknowledged that "[t]he Foreign Sovereign Immunities Act ("FSIA"), as

amended, pursuant to which these actions are filed, requires that a default judgment against a

foreign state be entered only after a plaintiff 'establishes his claim or right to relief by evidence

that is satisfactory to the Court.'  28 U.S.C. § 1608(e)."  Plaintiffs' Pretrial Statement at 3; see

also Memorandum on Liability at 2-4.[3]  In a discussion of the "historical background[,]"

Plaintiffs maintained that "[t]he evidence will demonstrate that Iran--through MOIS and IRGC--

---

[3]  Plaintiffs observed that "[t]here is . . . very little case law explaining exactly what the standard means."
Id. at 2.  Plaintiffs asked that the court adopt the standard articulated by the court in Ungar v. Islamic Republic of
Iran, 211 F. Supp.2d 91,98 (D.D.C. 2002): "a legally sufficient evidentiary basis for a reasonable jury to find for
plaintiff." Id. at 4.

Heiser, et al. v. Islamic Republic of Iran, et al.                                          8
Campbell, et al. v.  Islamic Republic of Iran, et al.

created Hizbollah as a terrorist organization tasked with spreading Islamic fundamentalism and

destabilizing governments through terrorist acts."  Plaintiffs' Pretrial Statement at 15-16.[4]

Plaintiffs asserted that at the hearing, they "will show that 'Saudi Hizbollah' comprises Hizbollah

members who are citizens of Saudi Arabia or operate in Saudi Arabia."  Id. at 16.  Plaintiffs

alleged that "[a]t all relevant times, the Islamic Republic of Iran, through its agents MOIS and

IRGC, provided material resources and support, in the form of funding, training and direction, to

Hizbollah, including Saudi Hizbollah[,]" and that "[t]he Islamic Republic of Iran, through MOIS

and IRGC, sponsors Hizbollah, including Saudi Hizbollah, within the meaning of 28 U.S.C. §

1605(a)(7)."  Id.

        In their discussion of the identities of the individuals who planned and executed the June

25, 1996 bombing at Khobar Towers, and of the manner in which the bombing was executed,

Plaintiffs rely entirely upon an indictment returned by a grand jury in the Eastern District of

Virginia in June, 2001.  Plaintiffs' Pretrial Statement at 22-23.[5]  Tracking the indictment,

_____

        [4]  Plaintiffs describe Hizbollah as "a politico-paramilitary organization which carries out acts of terrorism in
Lebanon and elsewhere, including Saudi Arabia."  Id. at 15.

        [5]  The 24-page indictment is Exhibit C to Plaintiffs' Pretrial Statement and Plaintiffs' Trial Exhibit No. 22.
At the time of the hearing on liability and damages--and indeed, to the best of the undersigned's knowledge, to this
date--none of the 14 individuals who was indicted, one of whom is identified only as a "John Doe[,]" has either been
tried or pled guilty in the Eastern District of Virginia.  Counsel for Plaintiffs, in response to the undersigned's
inquiry regarding whether a trial date had been set, stated that

                        [i]t's my understanding that nothing has happened in the case
                        since the indictment, that all of the defendants in that case are
                        somewhere overseas.  Some of them may be in Saudi custody.
                        And I heard that the expectation is that nothing will probably
                        happen going forward in that case, but we don't know that for
                        certain and there still is a pending indictment.

                                        * * *

Heiser, et al. v. Islamic Republic of Iran, et al.                                                    9
Campbell, et al. v.  Islamic Republic of Iran, et al.


Plaintiffs allege that four named "Hizbollah operatives" planned and executed the bombing.  Id.

With regard to the basis of the court's jurisdiction, Plaintiffs maintained that

> Section 1605(a)(7) of [FSIA] provides a cause of
> action against a foreign state for anyone who
> suffered personal injury "that was caused by an act
> of torture, extrajudicial killing, aircraft sabotage,
> hostage taking, or the provision of material support
> or resources . . . for such act . . . ."  28 U.S.C. §
> 1605(a)(7).  Thus, the FSIA explicitly authorizes
> wrongful death claims against a foreign state that
> provides material support or resources for the act of
> extrajudicial killing.

Id. at 23.

Plaintiffs further maintained that they would demonstrate that

> [t]he bombing was carried out by members of the
> terrorist organization known as Saudi Hizbollah,
> which, at the time,  was funded and supported by
> Iran, through its agents MOIS and IRGC, and thus,
> the Islamic Republic of Iran is liable to the Plaintiffs
> under the FSIA.

Id. at 23-24.

Plaintiffs submitted that "Decedents' status as servicemen does not bar Plaintiffs' claims

because Decedents were noncombatants (i.e., not engaged in hostilities)."  Id. at 24; see also

---

It is my understanding that none of those individuals [is] in
custody in the United States.

Transcript, December 12, 2003 ("December 12, 2003 Tr.") (Docket No. 42) at 16-17.

Heiser, et al. v. Islamic Republic of Iran, et al.                                                           10
Campbell, et al. v.  Islamic Republic of Iran, et al.


Memorandum on Liability at 4-6.


*Evidence with Respect to Liability Offered by Plaintiffs at the Hearing*

     Plaintiffs examined witnesses and offered other evidence with respect to liability and

damages on December 1, 2, 3, 4, 5, 8, 9, 10, 11, 12, 16, 18 and 19, 2003.  On December 19,

Plaintiffs moved to voluntarily dismiss Defendants "John Does 1-99," and the undersigned

granted the motion.  Transcript, December 19, 2003 ("December 19, 2003 Tr.") (Docket No.

128) at 69-70.[6]  The undersigned recessed the hearing until February 5, 2004, the earliest date

that Plaintiffs' counsel, Plaintiffs' witnesses and the court were be available to continue.  The

undersigned received further evidence on February 5, 6, 9 and 10, 2004.

     During the course of the 17-day evidentiary hearing, Plaintiffs called three witnesses on

the issue of liability: Patrick Clawson, Louis Freeh and Dale Watson.[7]  The process by which

testimony was elicited from these three witnesses was disproportionately protracted relative to

the brevity of the testimony ultimately offered as evidence.  See, e.g., Transcript, December 11,

2003 ("December 11, 2003 Tr.") (Docket No. 70) at 2-9, 11-14 (Plaintiffs' counsel unable to

advise the undersigned of a date certain on which Dr. Clawson would appear to complete his

testimony; Plaintiffs' counsel unable to represent when, or even whether, the Department of

---

    [6]  See also Memorandum on Liability at 9.  In their pretrial statement, Plaintiffs identified "John Does 1-99" as "other officials, employees, and agents of the Islamic Republic of Iran, or others, whose identities are presently unknown, who performed acts which caused the terrorist bombing of the Khobar Towers and the extrajudicial killing of the Decedents."  Final Pretrial Statement at 14.

    [7]  These three witnesses were the only liability witnesses whom Plaintiffs identified.  See Final Pretrial Statement at 25-45.

Heiser, et al. v. Islamic Republic of Iran, et al.                                        11
Campbell, et al. v.  Islamic Republic of Iran, et al.

Justice would provide "clearance" for Mr. Freeh and Mr. Watson to testify; undersigned

observed that as of December 11, 2003, "there has been no evidence on the crucial issue of

liability"); December 12, 2003 Tr. at 3-23, 105-113; Transcript, December 16, 2003 ("December

16, 2003 Tr.") (Docket No. 64) at 2-5.

Dr. Clawson first appeared on December 12, 2003.  The court granted Plaintiffs' request

that Dr. Clawson be qualified as an expert "in the areas of the Government of Iran, the support of

terrorism by the Government of Iran, and the economy of Iran."  December 12, 2003 Tr. at 28.

However, many of the opinions Dr. Clawson expressed were predicated upon information about

which he could not testify;[8] in other instances, the opinions were based largely on speculation.[9]

Prior to the undersigned's extended discussion with counsel regarding the undersigned's concern

---

[8]  See, e.g., id. at 63 ("I . . . received information, classified briefings, as that discussion [of the bombing at Khobar Towers] proceeded"); see also id. at 86-94, 102-103.

[9]  See, e.g., id. at 65-66:

> I would base my opinion on the--both what I thought was quite convincing evidence from the Saudis, but I was prepared to suspend that until I saw what the FBI developed, and once I saw that the FBI developed the same--a story that was almost exactly the same as the Saudis' story, I said, look, this is two independent confirmations of the same account.
>
> Furthermore, as time has passed, we have not heard any other account which has emerged, and yet generally with these terrorist episodes, if we get it wrong initially, additional evidence emerges later which suggests that this is the case, and we have not seen that at all in this case.
>
> So it's two accounts which come to much the same conclusions, no other independence to suggest the contrary.  I think that's pretty compelling.

Heiser, et al. v. Islamic Republic of Iran, et al.                                                12
Campbell, et al. v. Islamic Republic of Iran, et al.

with respect to the basis of the opinions about which Dr. Clawson testified, the undersigned

directed Dr. Clawson to wait outside the courtroom.  However, Dr. Clawson, without leave of the

court, left the courthouse.  Id. at 96-111; December 19, 2003 Tr. at 71-85.  One week later, when

counsel for Plaintiffs could not advise the undersigned when Dr. Clawson would return to

complete his testimony, the undersigned struck his December 12, 2003 testimony.  December 19,

2003 Tr. at 71-85. The undersigned granted Plaintiffs' motion for leave to recall Dr. Clawson;

however, Dr. Clawson was not available to return to the courthouse until February 9, 2004.  See

January 29, 2004 Order (Docket No. 51) at 1; Transcript, February 9, 2004 ("February 9, 2004

Tr.") (Docket No. 69) at 2-64.

        Plaintiffs' counsel identified Mr. Freeh and Mr. Watson as two of three liability

witnesses, but only reluctantly disclosed to the undersigned that as of the time of the final pretrial

conference, or indeed, during the first two weeks of the hearing on liability and damages, neither

man had been given "clearance" by the Department of Justice to testify in these consolidated

actions.  December 12, 2003 Tr. at 106, 110-113.  The two ultimately appeared to testify on

December 18, 2003, but confined their testimony regarding the involvement of the government

of Iran in the bombing at Khobar Towers to their opinions -- in the words of Mr. Watson--"as . . .

private citizen[s][.]"."  Transcript, December 18, 2003 ("December 18, 2003 Tr.") (Docket No.

43) at 52.

        Plaintiffs offered no evidence regarding the action of any official, employee or agent of

Defendants Islamic Republic of Iran, MOIS or IRGC.[10]

---

        [10] See n.6, supra, and accompanying text.

Heiser, et al. v. Islamic Republic of Iran, et al.                                    13
Campbell, et al. v.  Islamic Republic of Iran, et al.


*Intervening Change of Controlling Authority Regarding Private Right of Action Against a Foreign Government*

On January 16, 2004 -- during the recess in the evidentiary hearing -- a panel of the District of Columbia Circuit decided <u>Cicippio-Puleo v. Islamic Republic of Iran</u>, 353 F.3d 1024 (D.C. Cir. 2004).  In the opinion, the Circuit held that "neither 28 U.S.C. § 1605(a)(7) nor the Flatow Amendment, nor the two considered in tandem, creates a private right of action against a foreign government." <u>Id.</u> at 1033.  The undersigned ordered that no later than January 23, 2004, Plaintiffs file a memorandum regarding the application of <u>Cicippio-Puleo</u> to the remaining claims.  January 20, 2004 Order (Docket No. 47) at 2.

Plaintiffs filed the memorandum on January 23, 2004.  <u>See</u> Memorandum in Response to Court Order Dated January 20, 2004 ("January 23, 2004 Memorandum") (Docket No. 48).  In it, Plaintiffs maintained that "application of the *Cicippio-Puleo* decision to the instant actions extinguishes only those claims against Defendants grounded <u>solely</u> in the Flatow Amendment, 28 U.S.C. § 1605 note."  January 23, 2004 Memorandum at 2.  Plaintiffs further maintained that their second amended complaints "name and set forth common law claims for wrongful death, survival action, economic damages, intentional infliction of emotional distress, loss of consortium, and solarium[,]" and that such claims "are also properly asserted against Iran and its agents and instrumentalities under 28 U.S.C. § 1606, which was not dealt with in *Cicippio-Puleo*." <u>Id.</u>[11]  Plaintiffs suggested that their claims against Defendants the Islamic Republic of

---

[11]  Plaintiffs submitted that "the Circuit Court intentionally left this question unanswered and remanded the matter to the District Court specifically 'to allow plaintiffs an opportunity to amend their complaint to state a cause

Heiser, et al. v. Islamic Republic of Iran, et al.                                                            14
Campbell, et al. v.  Islamic Republic of Iran, et al.

Iran, MOIS and the IRGC "are viable because the Defendants are not entitled to immunity under 28 U.S.C. § 1605(a)(7) and the claims are based on state and common law."  Id. at 6 (footnote omitted).  Finally, Plaintiffs submitted that "[t]he [second amended complaints] set forth all of the facts necessary to establish a cause of action under any applicable theory."  Id.

        Plaintiffs asked that the hearing resume on February 5, 2004 as scheduled.  Plaintiffs' counsel represented that a delay would inconvenience the Plaintiffs who already had made travel plans, and that in any event, counsel would be available at a later date to address the court's concerns regarding the application of Cicippio-Puleo.  On January 29, 2004, the undersigned ordered that the evidentiary hearing which was scheduled to resume on February 5, 2004 "[would] proceed with respect to the common law claims set forth in Plaintiffs' second amended complaints."  January 29, 2004 Order (Docket No. 50) at 1.

        On February 6, 2004, when the schedule for the conclusion of the evidentiary hearing and for closing argument was addressed by the undersigned, counsel for Plaintiffs asked that counsel's closing argument be deferred until counsel filed Plaintiffs' proposed findings of fact and conclusions of law.  The undersigned ordered that Plaintiffs file their proposed findings and conclusions on April 1, 2004, the date proposed by Plaintiffs' counsel.  The undersigned scheduled Plaintiffs' closing argument for April 15, 2004, the date proposed by Plaintiffs' counsel.

---

of action under some other source of law, including state law . . . .'" Id. at 4 (citation omitted); but see id. at 8 ("Plaintiffs' [common law] claims against Defendants Iran, MOIS, and the IRGC, are unaffected by the *Cicippio-Puleo* decision.").

Heiser, et al. v. Islamic Republic of Iran, et al.                                                    15
Campbell, et al. v.  Islamic Republic of Iran, et al.

On April 1, 2004, Plaintiffs filed (1) Plaintiffs' Memorandum of Law in Support of Proposed Conclusions of Law (Docket No. 73); (2) Proposed Findings of Fact and Conclusions of Law (Docket No. 74); and (3) Plaintiffs' Bench Memorandum Summarizing Causes of Action Stated on Behalf of Each Plaintiff (Docket No. 75).  On April 9, 2004, the undersigned postponed the April 15 closing argument, intending to order supplemental briefing of issues relevant to the liability of the remaining Defendants.

*Apparent Conflict of Interest of Plaintiffs' Counsel*

On April 13, 2004--two days prior to the scheduled closing argument--the undersigned, during the undersigned's continued consideration of the application of <u>Cicippio-Puleo</u> to these consolidated actions, learned that Plaintiffs' counsel of record in these actions simultaneously represented the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan (hereinafter "the Sudan defendants") in another action pending in this court.  In the other action, <u>Owens, et al. v. Republic of the Sudan, et al.</u>, the plaintiffs sought damages against the Sudan defendants pursuant to the same statutory framework which Plaintiffs in these consolidated actions invoked.  The undersigned determined that the co-defendants of the Sudan defendants included the Islamic Republic of Iran and MOIS–two of the defendants which Plaintiffs' counsel's firm sued in these consolidated actions.  In <u>Owens</u>, the same firm whose counsel had been representing Plaintiffs in these consolidated actions, advanced an argument which was the polar opposite of the argument counsel advanced in Plaintiffs' January 23, 2004 Memorandum: that "there is no claim under the common law for the acts alleged here[,]" and

Heiser, et al. v. Islamic Republic of Iran, et al.                                    16
Campbell, et al. v.  Islamic Republic of Iran, et al.

that 28 U.S.C. § 1605(a)(7) "represents an unconstitutional delegation of power to the Executive

because it purports to allow the Executive to determine the jurisdiction of U.S. courts."  Sudan

Defendants' Memorandum of Points and Authorities in Support of Sudan Defendants' Motion to

Dismiss (Docket No. 49, Civil Action No. 01-2244) at 1, 7; see also April 13, 2004 Order

(Docket No. 77) at 3.

        The undersigned also determined that the plaintiffs in Owens had moved to disqualify the

firm from representation of the Sudan defendants on the ground that a "positional conflict" had

arisen in the course of the simultaneous representation of the Owens defendants and Plaintiffs in

the instant consolidated actions.  In their opposition to the motion, the firm denied that either the

Sudan defendants or the Plaintiffs in these consolidated actions "have been or will be harmed" by

the simultaneous representation of the two.  April 13, 2004 Order at 4 (citation omitted).

        The undersigned ordered the firm to file a memorandum by no later than April 15, 2004

regarding the apparent conflict.  April 13, 2004 Order at 4-5.  In the response filed in accordance

with the undersigned's order, lead counsel of record in these consolidated actions and another

firm partner represented that the lawyers representing the Sudan defendants in Owens  "were not

authorized to take a position opposite that taken in the Khobar Towers cases before Your

Honor."  Plaintiffs' Response to April 13, 2004 Court Order (Docket No.77) at 2.  Counsel who

filed the response advised that a determination had been made that the firm would "withdraw

promptly" from the representation of the Sudan defendants in the Owens case.  Id.  at 3-4.

Counsel who filed the response advised "that the Firm continues its commitment to the zealous

representation of the plaintiffs in the Khobar Towers cases, a commitment from which it has

Heiser, et al. v. Islamic Republic of Iran, et al.                                                    17
Campbell, et al. v.  Islamic Republic of Iran, et al.

never wavered."  Id. at 4.

Because counsel who filed the April 15, 2004 response did not address the firm's

representation in Owens of co-defendants of the two parties they sued in these actions, the

undersigned ordered that the firm file a further response by April 20, 2004.  April 16, 2004 Order

(Docket No. 79) at 2.  In their further response, counsel who filed the April 15, 2004 response

acknowledged that the Islamic Republic of Iran and MOIS were co-defendants of the Sudan

defendants which the firm previously represented.  However, counsel stated that "[t]he Firm has

never represented the Islamic Republic of Iran, [MOIS], or IRGC in Owens or in any other

proceeding."  Plaintiffs' Response to April 16, 2004 Court Order (Docket No. 80) at 1.


*Supplementation of April 1, 2004 Submissions; Continuance of Closing Argument; Leave to File
        Third Amended Complaints*

The undersigned rescheduled closing argument for June 21, 2004.  During the course of

the review of Plaintiffs' April 1, 2004 submissions in preparation for the closing argument, the

undersigned determined that Plaintiffs had failed to fully address the issues relevant to the court's

determination with respect to the liability of the remaining Defendants.  See May 26, 2004 Order

(Docket No. 81) at 1.  The undersigned therefore ordered Plaintiffs, by no later than June 9, 2004,

to file supplemental memoranda, and supplemental proposed findings and conclusions, to

address the matters relevant to liability which were enumerated in the order.  Id. at 2-7.  Most of

the matters the undersigned directed counsel to address concerned the causes of action pled in the

second amended complaints, as well as the "sources of law" on which Plaintiffs relied in their

Heiser, et al. v. Islamic Republic of Iran, et al.                                                    18
Campbell, et al. v.  Islamic Republic of Iran, et al.

second amended complaints as the jurisdictional predicates of the various causes of action.  Id. at

2-5.  Among the matters the undersigned directed Plaintiffs to address with respect to the

sufficiency of the evidence offered by Plaintiffs at the evidentiary hearing were:

> 1.  State whether Plaintiffs concede that they offered
> no evidence during the evidentiary hearing with
> respect to the identities of the "senior Iranian
> officials and senior elements of the Iranian
> government" who allegedly "fund[ed], plan[ned],
> train[ed], sponsor[ed], and travel[ed] . . . to organize
> and execute the Khobar Towers attack[.]
>
> * * *
>
> 2.  State whether Plaintiffs concede that they offered
> no evidence during the evidentiary hearing with
> respect to the identities of the "officials from the
> IRGC" who acted in "furtherance of the attack."
>
> * * *
>
> 3.  State whether Plaintiffs concede that they offered
> no evidence during the evidentiary hearing with
> respect to the identities of the "officials from . . .
> MOIS" who "also participated in the planning and
> funding of the attack."
>
> * * *
>
> 4.  State whether Plaintiffs concede that they offered
> no evidence during the evidentiary hearing
> regarding the identity of "the director of MOIS" or
> the existence of any position designated by that
> appellation.

Id. at 6-7.

Heiser, et al. v. Islamic Republic of Iran, et al.                                    19
Campbell, et al. v.  Islamic Republic of Iran, et al.

Two days after the entry of the order directing supplemental briefing of enumerated issues

by June 9, 2004, Plaintiffs moved for an enlargement of time until June 15, 2004 in which to file

the supplemental memoranda.  See Plaintiffs' Motion for an Enlargement of Time (Docket No.

82) at 1-2.  By a minute order entered on the same date, the undersigned granted the motion and

continued the closing argument until June 23, 2004.

Thereafter, Plaintiffs moved to continue the closing argument until a date on or after June

28, 2004.  See Motion and Amended Motion to Continue the June 23, 2004 Closing Argument

(Docket Nos. 83, 84).  On June 14, 2004, the undersigned granted the amended motion, and

continued the closing argument to July 1, 2004.

On June 15, 2004, Plaintiffs moved to modify the November 4, 2003 Final Pretrial Order

"to incorporate Plaintiffs' post-trial memoranda."  Plaintiffs' Motion to Modify the November 4,

2003 Final Pre-Trial Order (Docket No. 85) at 1.  In the motion, Plaintiffs suggested that

> [t]he Court of Appeals in *Cicippio-Puleo* took the
> unusual step of remanding the case to prevent
> injustice in light of the significant change of law
> announced by the Court.  The present case is in the
> same posture because the *Cicippio-Puleo* case was
> decided after this Court entered its Final Pre-Trial
> Order.

Id. at 3.  With respect to the parameters of the proposed modification, Plaintiffs stated

that

> [t]he Pre-Trial Order provided that Plaintiffs would
> pursue two basic claims for wrongful death and
> intentional infliction of emotional distress.
> Following the *Cicippio-Puleo* decision, the
> Plaintiffs continue to pursue these two basic claims

> but the source of law for these two claims is different.  **Plaintiffs now claim a right to recovery under federal common law and the laws of Florida and Ohio, among others.**  The elements of these two claims under these other sources of law are virtually identical to those adopted by this Court in its decisions utilizing the Flatow Amendment as the source of law for claims against a foreign government.

Id. at 3 (emphasis supplied).

Plaintiffs asserted that "Courts may permit a Pre-Trial Order to be amended when the danger of surprise or prejudice to the opposing party is small and a failure to amend might result in an injustice to the moving party."  Motion to Modify the November 4, 2003 Final Pre-Trial Order at 2 (citations omitted).  Plaintiffs also asserted that permitting them to amend the Final Pretrial Order "would result in no prejudice to Defendants because they have not appeared, have not been served with Plaintiffs's Pre-Trial Statement and, therefore, could not have relied on the description of legal theories in the Final Pre-Trial Order."  Id. at 3.

Plaintiffs also filed Plaintiffs' Response to May 26, 2004 Order (Docket No. 81) on June 15, 2006.  See May 26, 2004 Order at 1-7; May 28, 2004 Minute Order.   Eleven days earlier, the District of Columbia Circuit decided Acree v. Republic of Iraq, 370 F.3d 41 (D.C. Cir. 2004) .  In a holding directly relevant to the issues as to which the undersigned had directed supplemental briefing, the Circuit held that "generic common law cannot be the *source* of a federal cause of action" in a FSIA case, and that "a plaintiff proceeding under the FSIA must identify a particular cause of action arising out of a specific source of law."  Id. at 59.  However, the undersigned determined, during a preliminary review of Plaintiffs' 66-page Response to May 26, 2004 Order,

Heiser, et al. v. Islamic Republic of Iran, et al.                                        21
Campbell, et al. v.  Islamic Republic of Iran, et al.

that Plaintiffs had addressed Acree only superficially.  June 22, 2004 Order (Docket No. 87) at 1.

The undersigned therefore ordered that no later than June 25, 2004, Plaintiffs file a memorandum

in which they address the application of Acree to the claims asserted in these consolidated

actions.

On June 23, 2004, the undersigned denied Plaintiffs' Motion to Modify the November 4,

2003 Final Pre-Trial Order.  June 23, 2004 Order (Docket No. 88) at 1-4.

On June 28, 2004, after having been granted the requested enlargement of time in which

to do so, Plaintiffs filed their response to the undersigned's June 22, 2004 order.  See Plaintiffs'

Memorandum in Response to June 22, 2004 Order (Docket No. 91).  On the same date, they

moved for reconsideration of the order denying their motion to modify the Final Pretrial Order,

or, in the alternative, for leave to file third amended complaints.  See Plaintiffs' Motion for

Reconsideration, or in the Alternative, for Leave to File Third Amended Complaints (Docket No.

92).  In the memorandum, Plaintiffs maintained that "the application of the Acree decision, like

the Court's holding in Cicippio-Puleo, on the present consolidated cases is that Plaintiffs are

afforded the opportunity to proceed on their claims for wrongful death and intentional infliction

of [emotional] distress which arise out of specific sources of law identified [in the memorandum]

and more specifically articulated in Plaintiffs' post-trial memoranda."  Plaintiffs' Memorandum

in Response to June 22, 2004 Order at 4.  With respect to their alternative request for leave to file

third amended complaints, Plaintiffs asked "that this Court withhold issuance of any judgment in

these consolidated cases until after Defendants' time for responding to the Third Amended

Complaints has expired."  Plaintiffs' Motion for Reconsideration, or in the Alternative, for Leave

Heiser, et al. v. Islamic Republic of Iran, et al.                                             22
Campbell, et al. v. Islamic Republic of Iran, et al.

to File Third Amended Complaints at 6.

Because Plaintiffs failed to include the proposed third amended complaints with their

motion for leave to file third amended complaints in accordance with Local Civil Rule 7(i), the

undersigned struck Plaintiffs' Motion for Reconsideration, or in the Alternative, for Leave to File

Third Amended Complaints, from the record.  June 30, 2004 Order (Docket No. 96) at 1-2.

Additionally, the undersigned continued the closing argument pending further order.  Id. at 2.

On July 7, 2004, Plaintiffs filed a motion for reconsideration or for leave to file third

amended complaints which conformed to the requirements of Local Civil Rule 7(i).  The

undersigned heard oral argument on the motion on July 20, 2004.  On August 4, 2004, the

undersigned denied Plaintiffs' Motion for Reconsideration; granted Plaintiffs' motion for leave

to file third amended complaints; and ordered that Plaintiffs file the third amended complaints by

August 9, 2004.  August 4, 2004 Order (Docket No. 103) at 2-3.  Plaintiffs filed the third

amended complaints on August 4, 2004.  See Third Amended Complaints (Docket No. 104, Civil

Action No. 00-2329; Docket No. 90, Civil Action No. 01-2104).

*Third Amended Complaints*

Plaintiffs named as defendants in the third amended complaints the Islamic Republic of

Iran, the "Iranian Ministry of Information and Security[,]" and the "Iranian Islamic Revolutionary

Guard Corps[.]"  Plaintiffs again alleged that "[t]he Hizbollah terrorist organization is a creation

and agent of the Islamic Republic of Iran"; that "[i]n 1995, Hizbollah began plotting a terrorist

attack against United States interests in Saudi Arabia"; and that "[Hizbollah] ultimately

detonated a bomb outside Khobar Towers."  Third Amended Complaints at 2.  Plaintiffs allege

that "[u]nder United States law, the Islamic Republic of Iran --which funds, trains, and directs

Hizbollah through the Iranian Ministry of Information and Security and the Iranian Revolutionary

Guard Corps-- is responsible for this terrorist attack and for the murder of [Plaintiffs'

decedents]."  Id.

        With respect to jurisdiction, venue, choice of law and causes of action, Plaintiffs, in their

third amended complaints, allege that all three Defendants are subject to suit in the courts of the

United States pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. §

1605(a)(7); that the court has jurisdiction over the subject matter pursuant to 28 U.S.C. §

1391(f)(4); and that "[a]ctions for wrongful death, personal injury, intentional infliction of

emotional distress, and related torts perpetrated by foreign state sponsors of terrorism through

their officials, employees, and agents --within the meaning of 28 U.S.C. § 1605(a)(7)-- are

unique causes of action arising out of federal counter-terrorism statutes and are controlled by

federal law."  Id., ¶¶ 1-4.  Plaintiffs allege that the causes of action contained in the seven counts

enumerated in the third amended complaints are based on the following sources of law:

> A.  28 U.S.C. § 1605(a)(7) and the Flatow
>     Amendment;
>
> B.  28 U.S.C. § 1606, solely as to the Islamic
>     Republic of Iran;
>
> C.  Federal common law;
>
> D.  International law, as set forth primarily in
>     §§ 701 and 702 of the Restatement (Third)
>     of the Foreign Relations Law.  In this instance,

Heiser, et al. v. Islamic Republic of Iran, et al.                                    24
Campbell, et al. v. Islamic Republic of Iran, et al.

> defendants violated a definable, universal, and
> obligatory norm of an international character
> accepted by the civilized world.  One who commits
> an extra-judicial murder by terrorism is *hostis
> humani generis*, an enemy of all mankind;
>
> E.  State wrongful death and survival laws, whether
>      statutory or common law; and
>
> F.  State common law with respect to intention
>      infliction of emotional distress.

Id., ¶ 5.

At a status hearing on November 15, 2004, the undersigned set dates for the anticipated

filing by Plaintiffs of motions for entry of default, and scheduled closing argument for March 24,

2005.  On March 10, 2005, the Clerk of the Court entered defaults as to all three Defendants in

both cases.  Default (Docket No. 111, Civil Action No. 00-2329); Default (Docket No. 97, Civil

Action No. 01-2104).  The undersigned directed briefing with respect to enumerated

discrepancies in the names of the Defendants in advance of the closing argument.  See March 23,

2005 Order (Docket No. 112) at 1-3.  The briefing was completed (Docket No. 113), and closing

argument proceeded on March 24, 2005.

On April 1, 2005, Plaintiffs moved for an enlargement of time to file a memorandum of

law to address recent opinions of judges of this court in FSIA cases (Docket No. 114).  The

undersigned granted the motion, and Plaintiffs filed the memorandum on April 18, 2005 (Docket

No. 116).  With leave of the undersigned, Plaintiffs filed additional memoranda to address recent

opinions in FSIA cases on May 17, 2005 (Docket No. 117); December 8, 2005 (Docket No. 120);

Heiser, et al. v. Islamic Republic of Iran, et al.                                               25
Campbell, et al. v.  Islamic Republic of Iran, et al.


January 17, 2006 (Docket No. 124); and May 4, 2006 (Docket No. 127).


**ANALYTICAL FRAMEWORK**

*Decedents' Status as Members of the Armed Forces on Active Duty at the Base at the Time of the
    Bombing*

During the final pretrial conference, the undersigned asked counsel to address, in a

supplemental memorandum, a threshold question regarding the status of the deceased airmen on

whose behalf these consolidated actions were brought: Does FSIA, or any of the other provisions

on which Plaintiffs rely as a source of law for the various causes of action which they assert,

provide for recovery of damages arising from the death of a member of the United States Armed

Forces on active duty at the base at which the service member was stationed?  In a bench

memorandum filed as an exhibit to their Final Pretrial Statement, Plaintiffs maintained that

"Plaintiffs **may** recover for their claims against Defendants, pursuant to the [sic] § 1605(a)(7) of

the FSIA, because the Air Force officers and airmen at issue here died from a terrorist act while

noncombatants, operating under peacetime rules of engagement."  Bench Memorandum

Regarding the Ability of United States Service Members to Recover Damages Under the Foreign

Sovereign Immunities Act ("Memorandum Regarding Recovery by Service Members") (Docket

No. 30, Exhibit 6) at 2.  Plaintiffs offered two arguments in support of this contention: first,

"FSIA does not limit United States service members from the class of plaintiffs who may recover

under the state-sponsored terrorism exception to the FSIA"; second, "decedents died from a

terrorist attack while noncombatants, operating under peacetime rules of engagement."  Id.

Heiser, et al. v. Islamic Republic of Iran, et al.                                                    26
Campbell, et al. v.  Islamic Republic of Iran, et al.

In support of their contention that "Plaintiffs qualify for recovery under the FSIA because decedents died from a terrorist attack while noncombatants, operating under peacetime rules of engagement[,]" Plaintiffs stated that they were "aware of four FSIA cases in this Circuit where this Circuit has awarded damages to United States service members and their families who were injured or killed as result of a state-sponsored terrorist attack."[12]

Here, as in <u>Peterson</u>, Plaintiffs offered evidence that the decedents were not engaged in a combat mission at the time of the bombing which resulted in the deaths of the decedents.  <u>See, e.g.</u>, Plaintiffs' Pretrial Statement at 25.  The undersigned is mindful of absence of any express exclusion from FSIA of members of the armed forces on active duty at the base to which they were assigned. Nonetheless, the undersigned would be inclined, in a circumstance in which the remaining issues addressed herein were determined otherwise, to undertake a more searching review of FSIA's legislative history.[13]  However, upon consideration of the findings set forth herein with respect to the causes of action pled by Plaintiffs and the sufficiency of the evidence, no finding with respect to the intent of Congress regarding the reach of FSIA is required.

---

[12]   The case on which Plaintiffs principally relied was <u>Peterson v. Islamic Republic of Iran</u>, 264 F. Supp.2d 46 (D.D.C. 2003).  Plaintiffs acknowledge that "[t]hree of those cases did not affirmatively address a service member's right to recover under the FSIA."  Memorandum Regarding Recovery by Service Members at 2-3.

[13]   One consequence of a determination that Congress extended the reach of FSIA to actions for damages for the untimely and tragic deaths of members of the armed forces on active duty at the base or duty station to which they were assigned would be that in virtually every contemporary military engagement in which United States troops are the target of hostilities by forces other than the regular armies of the sovereign where the United States troops are serving, actions for damages under FSIA could lie.  The rules of engagement of the armed forces of the United States may not be entirely dispositive of this issue, since such rules govern the conduct only of United States troops.

Heiser, et al. v. Islamic Republic of Iran, et al.                                    27
Campbell, et al. v.  Islamic Republic of Iran, et al.

*Jurisdiction*

The jurisdictional prerequisites of actions brought pursuant to FSIA --unlike other
elements of this "nascent[,] . . . sensitive" and "still-evolving . . . area of jurisprudence" --are
reasonably well settled.[14]   The Foreign Sovereign Immunities Act "establishes the broad rule that
foreign states are immune from suit in United States courts."  Dammarell, 2005 WL 756090, at
*5 (citing 28 U.S.C. § 1604).  However, the statute includes enumerated exceptions, "[the most
recent [of which] was enacted in 1996 and revokes the sovereign immunity of a foreign state that
sponsors acts of terrorism."  Id. (citing Pub. L. No. 104-132, § 221, 110 Stat. 1214 (codified at 28
U.S.C. § 1605(a)(7)).  This so-called " state-sponsored terrorism" exception provides that a
foreign state "shall not be immune from the jurisdiction of courts of the United States or of the
States in any case" where

> money damages are sought against a foreign state
> for personal injury or death that was caused by an
> act of torture, extra-judicial killing, aircraft
> sabotage, hostage taking, or the provision of
> material support or resources . . . for such an act **if
> such an act or provision of material support is
> engaged in by an official, employee, or agent of
> such foreign state while acting within the scope
> of his or her office, employment, or agency.**

Id. (quoting 28 U.S.C. § 1605(a)(7) (emphasis supplied).

The state-sponsored terrorism exception is applicable only if three additional criteria are
met:

> [1] the foreign state was designated a state sponsor

---

[14]   See Dammarell v. Islamic Republic of Iran, No. 01-2224, 2005 WL 756090, at *1-2 (D.D.C. March 29,
2005).

Heiser, et al. v. Islamic Republic of Iran, et al.                                              28
Campbell, et al. v.  Islamic Republic of Iran, et al.

> of terrorism at the time of the terrorist act or as a
> result of the act[;] [2] the foreign state was afforded
> a reasonable opportunity to arbitrate the claim if the
> act occurred within the foreign state against which
> the claim has been brought[;] and [3] either the
> claimant or the victim was a national of the United
> States at the time of the terrorist act.

Id. (citing 28 U.S.C. § 1605(a)(7)(A), (B); see also Kilburn v. Socialist People's Libyan Arab

Jamahiriya, 376 F.3d 1123, 1127 (D.C. Cir. 2004).


*Causes of Action*

The District of Columbia has observed  that § 1605(a)(7) "is solely a jurisdictional

provision."  Kilburn, 376 F.3d at 1129 (citing Cicippio-Puleo, 353 F.3d at 1032); see also Acree,

370 F.3d at 58-59 (plaintiffs in FSIA actions cannot simply state a right of action under "generic

common law[,]" or merely "allude[ ] to the traditional torts . . . in their generic form[,]" and

instead, must "identify a particular cause of action arising out of a specific source of law.").  The

Circuit has held that "[t]o succeed in the end, the plaintiff must go beyond jurisdiction and

provide proof satisfying a substantive cause of action."  Id.  In an effort to distinguish

jurisdictional causation and causes of action, the Circuit has noted that

> [w]hether state tort law properly provides the
> plaintiff with a cause of action, for example, is not
> inextricably linked with, or necessary for
> meaningful review of, the proper scope of
> jurisdictional causation under § 1605(a)(7).  To the
> contrary, . . . these are analytically distinct
> questions.  Nor can the cause of action question
> fairly be characterized as an antecedent or threshold

Heiser, et al. v. Islamic Republic of Iran, et al.                                    29
Campbell, et al. v.  Islamic Republic of Iran, et al.

> issue.  The question of whether the plaintiff has a
> cognizable cause of action (and what that cause of
> action might be) is not a question separate from the
> merits; it *is* the merits.

Id. at 1134; see also Holland v. Islamic Republic of Iran, No. 01-1924, 2005 U.S. Dist. LEXIS

40254, at *27 (D.D.C. October 31, 2005) .

 The District of Columbia Circuit instructs that causation is both a jurisdictional

requirement and an element of "proof satisfying a substantive cause of action."  Kilburn, 376

F.3d at 1123, 1128-29.  The Circuit has held that the proximate cause standard applies to the

former; with respect to the latter, the Circuit has observed that each source of law which provides

a cause of action "will no doubt carry with it . . . its own rules of causation."  Id. at 1129.

*Default Judgment*

 This court has held that "[a] court shall not enter a default judgment against a foreign

state 'unless the claimant establishes his claim or right to relief by evidence that is satisfactory to

the court.'"  Campuzano v. Islamic Republic of Iran, 281 F. Supp. 2d 258, 268 (D.D.C. 2003)

(citing 28 U.S.C. § 1608(e); Roeder v. Islamic Republic of Iran, 333 F.3d 228, 232-33 (D.C. Cir.

2003)); see also Bodoff v. Islamic Republic of Iran, No. 02-1991, 2006 U.S. Dist. LEXIS 13792,

at *4 (D.D.C. March 29, 2006).[15]

## PROPOSED FINDINGS OF FACT WITH RESPECT TO LIABILITY

---

[15]  This standard is identical to the standard for entry of default judgments against the United States.  See
Fed. R. Civ. P. 55(e).

Heiser, et al. v. Islamic Republic of Iran, et al.                                                    30
Campbell, et al. v.  Islamic Republic of Iran, et al.

Plaintiffs filed proposed findings of fact and conclusions of law in accordance with the

order of the undersigned.  As support for their proposed findings of fact, Plaintiffs rely upon

three categories of evidence: (1) "the investigation of the bombing conducted by the Federal

Bureau of Investigation ("FBI") and the conclusions reached by former FBI Director Louis Freeh

and former FBI chief of counter-terrorism Dale Watson as to the perpetrators of the attack"; (2)

"the expert testimony of [Patrick Clawson] [,] a well-known scholar on the Islamic Republic of

Iran"; and (3) "the testimony of five eyewitnesses to the attack."  Proposed Findings and

Conclusions at 1.

The undersigned, upon consideration of all of the evidence offered by Plaintiffs with

respect to the liability of Defendants, concludes that the findings of fact which Plaintiffs propose

with respect to liability are not supported by the evidence which Plaintiffs offered during the

course of the evidentiary hearing.  More specifically, the undersigned finds that Plaintiffs failed

to establish a nexus between the June 25, 1996 bombing and any action or decision of any of the

Defendants in these consolidated actions.  Accordingly, the undersigned recommends that the

court find that Plaintiffs failed to "[establish] [their] claim or right to relief by evidence that is

satisfactory to the Court[.]"  Haim, 2006 U.S. Dist. LEXIS 12816, at *3 (citation omitted).

*The Investigation of the Bombing Conducted by the FBI and the Conclusions Reached by Freeh
     and Watson "as to the [P]erpetrators of the [A]ttack"*

Plaintiffs' proposed findings predicated upon the testimony of Louis Freeh and Dale

Watson conclude with the proposed finding that "[t]he Khobar Towers bombing was planned,

funded, and sponsored by senior leadership in the government of the Islamic Republic of Iran;

Heiser, et al. v. Islamic Republic of Iran, et al.                                                 31
Campbell, et al. v.  Islamic Republic of Iran, et al.

the IRGC principally had the responsibility and worked with Saudi Hizbollah to execute the

plan, and the MOIS participated in the planning and funding of the attack."  Proposed Findings

and Conclusions at 9, ¶ 28.  However, the undersigned finds that this proposed finding is not

warranted by the testimony of Freeh and Watson, and is largely conclusory.

Mr. Freeh testified that the Khobar Towers bombing occurred during his tenure as

Director of the Federal Bureau of Investigation.  Mr. Freeh explained that

> my instructions from the President and the
> Secretary of State and the National Security
> Advisor at the time were to conduct an intensive
> full-blown FBI field forensic criminal investigation
> **and to attempt to identify subjects who were
> responsible and to proceed to charges if that
> could be established.**

December 18, 2003 Tr. at 6 (emphasis supplied). [16]  With respect to his role in the investigation,

Freeh explained that he

> was directly involved in terms of, you know,
> keeping the liaison necessary with the Saudi
> authorities to facilitate the investigation as it
> proceeded beyond the first initial stages.

Id.


Freeh summarized the "valuable [forensic] evidence [obtained] through the assistance of

the Saudis[.]"  Freeh stated, without explanation, that "we also determined that [the bombing]

---

[16]  Freeh testified that Dale Watson, "the FBI's chief of counterterrorism," was responsible "for parts of the
day-to-day investigation."  Id.

Heiser, et al. v. Islamic Republic of Iran, et al.                                                    32
Campbell, et al. v.  Islamic Republic of Iran, et al.


was an act of terrorism."  December 18, 2003 Tr. at 10.

Freeh testified that "[a]t some point in the investigation," the FBI obtained "direct

access" to "six Saudi nationals who were being detained in Saudi Arabia[.]" December 18, 2003

Tr. at 11.  Freeh explained that

> [w]e had been working for several years -- as it
> turned out, about two and a half years -- to get
> direct access to six individuals who were detained
> by the Saudis and who were described by the
> Saudis to us as participants in the actual attack.

Id.  Freeh testified that

> we learned a great deal of information which was
> the basis for the indictment in June of 2001.  First
> of all, they admitted to us that they were members
> of the Saudi Hizbollah organization which we
> considered and of course our state department
> considers a terrorist organization.
>
> They also admitted complicity in the attack, which
> of course was very important in terms of the
> indictment.  Beyond that, they implicated senior
> Iranian officials in the funding, planning, and
> sponsorship of the attack, and one of the witnesses
> in particular described this connection in great
> detail.

Id. at 13; see also id. at 14 ("[t]he information we learned based on those interviews was that the

attack was organized and sponsored by the IRGC . . . and that there was participation in the

planning, in the funding of the attack by the MOIS . . . , as well as senior elements of the

government that they provided the funding, . . . the training, . . . the travel, as well as the other

Heiser, et al. v. Islamic Republic of Iran, et al.                                    33
Campbell, et al. v.  Islamic Republic of Iran, et al.

support that was necessary to organize the attack.").  Freeh stated that he believed that "these

admissions" were reliable.  Id. at 15; see also id. at 21-22.[17]

    Mr. Freeh's references to the FBI's investigation notwithstanding, the conclusion

he ultimately offered was not the Bureau's, but his own:

> Well, **my own conclusion, again not speaking for the FBI at this point,** was that the attack was planned, funded, and sponsored by senior leadership in the government of the Republic of Iran, the IRGC principally had the responsibility of putting that plan into operation, and it was implicated with the use of the Saudi Hizbollah organization and its members.

December 18, 2003 Tr. at 16 (emphasis supplied).

    Dale Watson held supervisory roles in the FBI related to "counterterrorism and

counterintelligence[.]"  December 18, 2003 Tr. at 31-33.  Mr. Watson testified that the Bureau's

investigation of the bombing at Khobar Towers "hinged upon getting cooperation from the

Saudi government through their service called the Mubahith."  December 18, 2003 Tr. at 39.

Mr. Watson stated that the FBI "at some point in the investigation . . . obtain[ed] direct access to

six Saudi nationals who were being detained in Saudi Arabia[.]"  Id. at 40.  Watson described

this access as an "important breakthrough" "mainly because it was in direct conflict to law that

---

[17]  "[T]he indictment in June of 2001" to which Mr. Freeh referred is the 46-count indictment returned by a grand jury in the Eastern District of Virginia.  A total of 14 individuals were charged with murder and conspiracy.  No government, or any entity or subdivision thereof, was charged, and no individual who was indicted was identified with reference to any leadership role in any government, entity or subdivision.  None of the individuals who was indicted has been tried.  Plaintiffs marked the indictment as Exhibit 22 and moved for the admission of the exhibit into evidence as proof of the guilt of at least the six individuals --whom Mr. Freeh declined to name-- with respect to the bombing at Khobar Towers.  The undersigned declined to admit the indictment as evidence with respect to the liability of any of the Defendants in these consolidated actions.  December 18, 2003 Tr. at 45, 46-47; see also n. 5, supra.

Heiser, et al. v. Islamic Republic of Iran, et al.                                                      34
Campbell, et al. v.  Islamic Republic of Iran, et al.

we would --law enforcement, FBI would have access to, direct access to Saudi citizens who

were in custody."  Id. at 41.  When asked to state the information which the six individuals in

custody in Saudi Arabia provided, "limiting [the] response to information that's publically

available[,]" Mr. Watson testified:

> **Within the limits of what I might add here on
> the indictment,** I think it's pretty clear what they
> provided.

Id. at 42. (emphasis supplied).[18]  When asked to "describe the types of other information that

was available that supported [the] conclusion" about which he, like Mr. Freeh, testified, Mr.

Watson said that

> **[b]ased upon my instructions from the
> Department of Justice, I cannot get into that
> specific information.**  So if you look at what the
> indictment says and the way it's laid out, it's the
> basis of drawing that conclusion.  One could draw
> that conclusion.

Id. at 44 (emphasis supplied).  When asked "[whether] individuals within the government of

Iran . . . [were] involved in the planning of the Khobar Towers attack[,]" Watson answered

"Yes.  As reflected in the indictment."  Id. at 48; see also id. at 50, 52.[19]

          Mr. Watson --like Mr. Freeh-- testified that the conclusions about which he testified

were not those of the FBI, and instead, were his own:

---

[18]  But see n.20, supra.

[19]  The indictment does not support Mr. Watson's assertion: none of the individuals who was indicted was
identified as an official of the government of Iran.  Mr. Watson estimated that the evidence which he was unable to
discuss --presumably, grand jury material-- comprised as much as 30 percent of the basis of the conclusions about
which he testified.  Id. at 53-55.

Heiser, et al. v. Islamic Republic of Iran, et al.                                    35
Campbell, et al. v.  Islamic Republic of Iran, et al.

> [T]here were other factors that are not
> represented here [in the indictment] but led me to
> conclude, not an FBI conclusion but now as a
> private citizen, my opinion is this was Saudi
> Hizbollah supported by Lebanese Hizbollah,
> certainly clearly approved and funded by the
> Iranians.

Id. at 52.

       In sum, the evidence offered regarding the liability of any actor with respect to the

planning or execution of the July, 1996 bombing at Khobar Towers is limited to (1) testimony

regarding the statements of six unnamed "Saudi nationals[,]" and (2) the opinions of Mr. Freeh

and Mr. Watson --as "private citizen[s]"-- that Saudi Hizbollah, among other entities, assisted in

the planning and execution of the bombing.  The undersigned finds that such evidence is not

"evidence that is satisfactory to the Court" on which a default judgment can be predicated.

       With respect to the testimony regarding the statements of the six unnamed individuals

who were in custody in Saudi Arabia at the time of the statements, the undersigned observes that

none of the six has been tried in the Eastern District of Virginia, where the indictment was

returned.  Plaintiffs' intention apparently was to rely on the indictment as evidence of the

complicity of the six individuals.[20]  However, no reported opinion holds that a default judgment

---

       [20]  See n.5, supra, and accompanying text.  While both Mr. Freeh and Mr. Watson testified that the
statements of the six unnamed individuals then in custody in Saudi Arabia were "reliable[,]" neither could explain
the circumstances of the interrogation through which the statements were elicited.  The undersigned is mindful that
the court's task in this context is not to determine the "voluntariness" of the statements in accordance with the
standards of American jurisprudence which apply to criminal trials in the United States.  However, in the absence of
evidence from which this court could assess whether these statements were elicited in a manner which this court
would deem coercive, the undersigned has no basis upon which to assign more than minimal probative value to the
statements.  See, e.g., In re Guantanamo Detainee Cases, 355 F. Supp. 2d 443, 472-73 (D.D.C. 2005) (citations
omitted) (commenting that the United States Supreme Court has noted "the probable unreliability of confessions that
are obtained in a manner deemed coercive"; voluntariness standard intended, in part, "to ensure reliability of

Heiser, et al. v. Islamic Republic of Iran, et al.                                      36
Campbell, et al. v.  Islamic Republic of Iran, et al.

may be predicated upon allegations set forth in an indictment.  Indeed, an indictment is evidence

only "that the persons named have been indicted by a grand jury on the charges recited."  <u>Brown</u>

<u>v. Department of Justice</u>, 715 F.2d 662, 667 (D.C. Cir. 1983).  Therefore, "it is well settled that

**an indictment is not evidence of the acts charged therein**[.]" <u>Id.</u> (emphasis supplied).  More

recently, this court has considered a variation of this well-settled principle in the court's

evaluation of the reliance by plaintiffs in a civil action on an indictment by which defendants

were charged with related criminal conduct.  The court observed "the government's documents"

--which included the indictment-- reflected the reality that actions of the government may have

been undertaken "in order to achieve certain strategic objectives and these goals may be

different from those of private litigants."  <u>In re Vitamins Antitrust Litigation</u>, No. 99-197, 2000

WL 1475705, at *11 n.13 (D.D.C. May 9, 2000).

        Moreover, Mr. Freeh and Mr. Watson were precluded, both by the operation of Rule 6(e)

of the Federal Rules of Criminal Procedure and the rules applicable to the disclosure of

classified material, from testifying in these consolidated civil actions regarding any grand jury

matter.  <u>See, e.g.</u>, December 18, 2003 Tr. at 23-24.

        In any event, the indictment, even had the undersigned received it as evidence of the

liability of Defendants, would not have been dispositive of the liability of the Defendants in

these consolidated actions.  The indictment named 14 individuals, one of whom was identified

---

incriminating statements[.]").  The absence of testimony regarding the basis of the conclusion that the statements
were "reliable" only serves to render the task even more futile.  <u>See, e.g.</u>, December 18, 2003 Tr. at 15 (**emphasis
supplied**) ("Q.  **Without providing any detail in answering this question**, did the FBI obtain any further evidence
further supporting the statements of these six individuals that the government of Iran, the MOIS, and the IRGC were
involve[d] in the Khobar Towers attacks?  A.  Yes.").

Heiser, et al. v. Islamic Republic of Iran, et al.                                                    37
Campbell, et al. v.  Islamic Republic of Iran, et al.

only as "John Doe[,]" as defendants.  None of the Defendants in these consolidated actions was

indicted, and none of the individuals who was indicted was described as an employee, officer, or

agent of any Defendant in these actions.[21]  While both Mr. Freeh and Mr. Watson testified that

the six individuals from whom statements were taken were among the 14 who were indicted, no

allegation contained in the indictment would warrant the finding, for purposes of entry of a

default judgment, that the bombing at Khobar Towers was executed by Saudi Hizbollah, with

the support of MOIS and the IRGC.[22]

      Mr. Freeh's testimony that "senior elements of the government [of Iran]" were complicit

in the bombing is predicated upon the statements of the six individuals who, at one time, were in

custody in Saudi Arabia.[23]  However, the "senior elements" were not identified by Freeh as

employees,  agents or officials of the government of Iran, of MOIS or the IRGC.  December 18,

2003 Tr. at 14, 23.  Moreover, Plaintiffs' claims rest on a theory of agency of Hizbollah;[24]

however, Plaintiffs offered no evidence through Freeh or Watson which could warrant a finding

that Hizbollah acted as an agent of the Islamic Republic of Iran.  See Kilburn, 376 F.3d at 1131

(emphasis supplied) (defendant Libya "is responsible for the acts of its agent 'within the scope

of . . . [its] agency, . . . **provided, of course, that the elements of agency are established."**);

---

[21]  See n.19, supra.

[22]  See n.17, supra.

[23]  Plaintiffs did not offer the statements as evidence.  Compare Ungar v. Islamic Republic of Iran, 211
F.Supp.2d 91, 93-94 (D.D.C. 2002) (plaintiffs filed English translations of the confessions on which their expert
witness relied).

[24]  See Third Amended Complaints at 2 ("Hizbollah . . . is . . . [an] agent of the Islamic Republic of Iran");
id., ¶35 ("Agents of Defendants . . . selected and approved a target . . . to be destroyed by Hizbollah agents[.]").

Heiser, et al. v. Islamic Republic of Iran, et al.                                                    38
Campbell, et al. v.  Islamic Republic of Iran, et al.

see also Holland, 2005 U.S. Dist. LEXIS 40254, at *39 (the terms of the Flatow Amendment are

"confine[d] . . . to officials or agents of foreign states.").  In the absence of evidence that any

official, employee or agent of Iran, acting within the scope of his or her office, employment, or

agency, caused the decedents' deaths, the undersigned has no basis upon which to find that

Plaintiffs have "established [their] claim or right to relief by evidence that is satisfactory to the

Court."  Haim, 2006 U.S. Dist. LEXIS 12816, at *3; see also Kilburn 376 F.3d at 1131;

Holland, 2005 U.S. Dist. LEXIS 40254, at *39.

        Finally, Mr. Freeh and Mr. Watson stated unequivocally that the conclusions about

which they testified were their personal opinions.  While the knowledge, expertise and

commitment of these men is not questioned herein, the undersigned notes that neither was

offered as an expert witness, and their personal opinions --which they were precluded from

explaining-- are therefore of little relevance in this context.[25]

        For the foregoing reasons, the undersigned finds that Plaintiffs have failed to offer

"evidence that is satisfactory to the court" regarding the liability of any the Defendants for the

July, 1996 bombing at Khobar Towers.


*The Testimony of Patrick Clawson*

        Plaintiffs, in their pretrial statement, designated Dr. Clawson as an expert witness.  They

---

        [25]  Even if Plaintiffs had asked that the court to regard Freeh and Watson as expert witnesses, their opinions
would have been of little probative value in the absence of an explanation of the basis of their opinions.  See, e.g.,
United States v. Morrow, 374 F. Supp. 2d 51, 60 (D.D.C. 2005) (citations omitted) ("evidentiary reliability" requires
that an expert witness "must have 'good grounds' for his or her belief.").

Heiser, et al. v. Islamic Republic of Iran, et al.                                    39
Campbell, et al. v.  Islamic Republic of Iran, et al.

identified him as the Director of Research at The Washington Institute for Near East Policy.

Plaintiffs indicated that Dr. Clawson would testify regarding the origin of Hizbollah; the status

of MOIS and IRGC as agencies of the government of Iran; the involvement of MOIS and IRGC

in terrorist activities, including those of "Hizbollah and Saudi Hizbollah"; the annual budgets of

MOIS and IRGC, and the amount of a punitive damages award "which would have an impact on

their terrorist activities."  Plaintiffs' Pretrial Statement at 27.

     Plaintiffs' counsel discussed the scope of Dr. Clawson's anticipated testimony as part of

the undersigned's consideration of preliminary matters on December 12, 2003, the day Dr.

Clawson first appeared before the undersigned.  Plaintiffs' counsel first proffered:

> We expect Dr. Clawson to testify about the extent
> and nature of the FBI investigation, the
> unprecedented relationship between Saudi Arabia
> and the United States in the investigation --it was
> one of the first times that FBI agents were allowed
> to actually interview Saudi detainees --and I expect
> him to talk about . . . that [unparalleled] or
> unprecedented cooperation that led the FBI to its
> conclusions, and that this was all part of the public
> record[.]

December 12, 2003 Tr. at 20; see also id. at 19 ("he will . . . speak directly to the incident itself

and the link between Saudi Hizbollah, Hizbollah and Iran.").

     The undersigned asked Plaintiffs' counsel to address the extent to which Dr. Clawson

"[would] . . . be precluded from testifying about such information on the ground that it is either

classified, subject to Rule 6(e) or otherwise material which he cannot discuss in this

forum[.]" December 12, 2003 Tr. at 20-21.  In response, Plaintiffs' counsel said that

Heiser, et al. v. Islamic Republic of Iran, et al.                                              40
Campbell, et al. v.  Islamic Republic of Iran, et al.

> I have never asked him about the specific material
> he was privy to because he would not even disclose
> that to me, Your Honor, because it is privileged, or
> confidential, rather.

Id. at 21.  When asked whether counsel's expectation was that Dr. Clawson would state his

opinions, but not the basis for them, counsel stated:

> **Not exactly**. . . . [T]he vast majority of the
> documents and information upon which he relies
> will be disclosed to the Court during his
> examination.

Id. (emphasis supplied). ; see also id. at 22-23 (Dr. Clawson would be unable to disclose what

was discussed in "some compartmentalized top-secret [Department of Defense] meetings" to

which he had been privy).

        The undersigned, concerned that the just-expanded proffer of the scope of the testimony

to be elicited from Dr. Clawson signaled Plaintiffs' intent to rely exclusively upon the testimony

of Dr. Clawson to establish the liability of the Defendants, asked whether Plaintiffs maintained

that Dr. Clawson's testimony "[would] be sufficient to make the requisite showing of liability."

December 12, 2003 Tr. at 15.  After Plaintiffs' counsel conferred with each other, one of their

number stated that

> it is our position that the testimony of Dr. Clawson
> will be sufficient to prove the liability of Iran for the
> Khobar Towers bombing; however, because the
> Department of Justice has indicated that we will
> receive clearance in the next day to two days and
> that their decision will be a positive one that we will
> be allowed to call the FBI, we don't believe we will
> have to rely on Dr. Clawson alone or the documents
> alone and that we will have an FBI witness here to

Heiser, et al. v. Islamic Republic of Iran, et al.                                        41
Campbell, et al. v.  Islamic Republic of Iran, et al.

testify as to liability.

Id. at 18.

When Dr. Clawson returned to testify on February 9, 2004, Plaintiffs elicited testimony

which was significantly less expansive than that which they summarized in their pretrial

statement and proffers on the record in December 12, 2003.  See  February 9, 2004 Tr. at 2-64.

Contrary to the representations of Plaintiffs' counsel, Dr. Clawson did not "speak directly to the

incident itself and the link between Saudi Hizbollah, Hizbollah and Iran."  December 12, 2003

Tr. at 19; but see February 9, 2004 Tr. at 31 ("we have not called Dr. Clawson to discuss the

Khobar Towers bombing incident specifically."); id. at 41 ("I'm a little hesitant to go out on a

limb and talk about the Ministry of Information and Security.").  Nor did Dr. Clawson "testify

about the extent and nature of the FBI investigation" or "talk about . . . [the cooperation] that led

the FBI to its conclusions[.]"  See id. at 20.   Rather, Dr. Clawson merely vouched for the

credibility of Mr. Freeh:

> I would credit Director Freeh's statements.  Having
> been a U.S. Government employee myself with a
> security clearance, I know how difficult it is to get
> things like this cleared for publication, and so
> therefore I have great confidence that Director Freeh
> would not make such a statement in an offhand
> manner, or he would not be allowed --would not get
> cleared to make a statement like this in an offhand
> manner, that it would be a painful process for him to
> get approval for such references.

Heiser, et al. v. Islamic Republic of Iran, et al.                                42
Campbell, et al. v.  Islamic Republic of Iran, et al.


February 9, 2004 Tr. at 57.[26]

In support of their proposed findings of fact and conclusions of law, Plaintiffs rely upon

Dr. Clawson's testimony for seven discrete points:

> [1].  Iran sponsored terrorist activities in 1995 and
> 1996.
>
> [2].  MOIS is engaged in terrorist activities.
>
> [3].  IRGC is engaged in terrorist activities.
>
> [4].  Saudi Hizbollah is a terrorist organization.
>
> [5].  Iran and IRGC support Saudi Hizbollah.
>
> [6].  At the time of the bombing of Khobar Towers,
> Iran spent an estimated amount of between
> $50,000,000 and $150,000,000 on terrorist activities.
>
> * * *
>
> [7].  Iran will be sensitive to any judgement of this
> Court.

Proposed Findings and Conclusions at 10-11 (citations omitted).

The undersigned finds that the testimony of Dr. Clawson, evaluated alone or in

conjunction with the testimony of Mr. Freeh and Mr. Watson, does not constitute "evidence that

is satisfactory to the court" regarding the liability of any or all of the Defendants.  The

undersigned finds that the testimony elicited from Dr. Clawson was largely confined to the

historical context of the contemporary relationships among the government of the Islamic

---

[26]  The statements to which Dr. Clawson referred were Mr. Freeh's remarks to a session of Congress; "[a]n editorial or op-ed piece in *The Wall Street Journal*"; and Freeh's trial testimony.  Id. at 55-56.

Heiser, et al. v. Islamic Republic of Iran, et al.                                        43
Campbell, et al. v.  Islamic Republic of Iran, et al.

Republic of Iran and its agencies; the religious and political demographics of the population of

Iran; and Iran's relationships with its neighbors.  See, e.g., February 9, 2004 Tr. at 5-10, 15-17,

22-31, 30-41, 42-55.  To the extent that Dr. Clawson offered any testimony regarding terrorist

activity undertaken by any of the Defendants in these consolidated actions, such testimony was

entirely conclusory.   See Proposed Findings and Conclusions at 10 (Iran "sponsored terrorist

activities in 1995 and 1996"; Iran and IRGC are "engaged in terrorist activities[,] . . . and support

Saudi Hizbollah.").

        In sum, Iran's "sponsor[ship]" of "terrorist activities[,]" the participation of MOIS and

the IRGC in "terrorist activities[,]" and Iran's and the IRGC's "support [of] Saudi Hizbollah" is

not "evidence that is satisfactory to the Court" that Iran, MOIS and the IRGC --the Defendants in

these consolidated actions-- are liable for the bombing at Khobar Towers.  Indeed, such a

determination in the context of the evidence offered by Plaintiffs in these consolidated actions

would be tantamount to a finding that Iran is responsible for any terrorist activity for which a

FSIA action is brought.


**CONCLUSION**

        For the foregoing reasons, it is,  this 6th day of June, 2006,

        **RECOMMENDED** that the court find that Plaintiffs failed to "[establish] [their] claim

or right to relief by evidence that is satisfactory to the Court[,]" and that default judgments not be

Heiser, et al. v. Islamic Republic of Iran, et al.                                    44
Campbell, et al. v.  Islamic Republic of Iran, et al.


entered.[27]



June 6, 2006                            /s/_____
_____      DEBORAH A. ROBINSON
                                       United States Magistrate Judge






          **Within ten days after being served with a copy, any party may file written
objections to this report and recommendation.  The objections shall specifically identify the
portions of the proposed findings and recommendations to which objection is made and the
basis for the objection.  In the absence of timely objections, further review of issues
addressed herein may be waived.**

---

          [27] Should the trial court reach a contrary determination, the transcripts of the testimony of the Plaintiffs; the
exhibits admitted during their testimony; the testimony of Dr. Dana Cable, "an expert concerning the grief process";
and the testimony of Dr. Herman Miller, "an economic consultant[,]" provide a basis for the court to do so without
taking further evidence.  See Proposed Findings and Conclusions at 31-34, 288-290.

Heiser, et al. v. Islamic Republic of Iran, et al.                                          45
Campbell, et al. v.  Islamic Republic of Iran, et al.